Rooker vs. Perkins and another.

In an action under the mill dam law (R. S., 1858, chap. 56), the plaintiff may re-
cover compensation for all injuries to his land, whether caused directly by
overflowing it, or indirectly by rendering it less productive and useful, but
not for damages in consequence of noxious and offensive vapors which affect
the health of the plaintiff or of his family but do not affect the land itself.

After twenty years' peaceable and uninterrupted adverse enjoyment of an ease-
ment, a grant will be presumed.

June Term, 1861.

ROOKER
v.
PERKINS et al.

APPEAL from the Circuit Court for *Racine* County.

This was an action under the mill dam law, commenced in September, 1859. The complaint, after stating in the usual form that about eight acres of the plaintiff's farm had been overflowed and injured in consequence of the erection of the defendants' dam, alleged that the ebbing and flowing of the water upon said eight acres had caused the atmosphere in the neighborhood to become impure, by means of which he and his family, who resided on the farm, had, from time to time, become sick, and he had been obliged to expend a large sum of money in his and their cure. The complaint stated also that the dam was raised to an unreasonable height. On the trial, the plaintiff offered evidence to sustain his allegations in regard to the corruption of the air and the consequent sickness of his family, but the court excluded it. One issue between the parties was, whether the dam had been erected and maintained for twenty years next before the commencement of the suit, at the same height at which it was when the action was commenced. Upon this point, the court gave the jury this instruction : " If for twenty years next before the commencement of this suit the defendants have raised the water at their mills the same uniform height that it now is, or was at the commencement of this suit, and the water has during all that time been kept up and maintained uninterruptedly at a height equal to or greater than at the time of commencing this suit (except mere accidental interruptions), the plaintiff cannot recover, for the reason that an acquiescence on his part in such a use of the water constitutes a complete bar to a recovery for flowing his land." This instruction, and the exclusion of the evidence above mentioned, presented the only questions considered in this court, and the other instructions given are omitted. Verdict and judgment for the defendants.

*Judd & Joy*, for appellant, as to the nature of the injuries for which compensation should be allowed in an action of this kind, cited R. S., chap. 56, secs. 4, 13 ; *Robbins vs. Mil. & Hor. R. R. Co.*, 6 Wis., 636, 643 ; *M. & B. Man. Co. vs. Fuller*, 15 Pick., 554 ; *The Palmer Co. vs. Ferrill*, 17 id., 58, 63, 67 ; and argued that the 16th section of the mill

dam law should receive a construction favorable to the life
and health of the injured party (3 Wis., 461); that the evi-
dence excluded was admissible also as tending to show that
the dam was raised to an unreasonable height; and that the
court erred in its charge as to the effect of twenty years
user. *Stiles vs. Hooker*, 7 Cow., 266; *Tinkham vs. Arnold*, 3
Greenl., 120.

*Royce & Cole* (with whom were *Lyon & Adams*), for re-
spondents, argued that the plaintiff's remedy for a corrup-
tion of the air, causing sickness, was by an action to abate
the dam as a public or private nuisance (*Eames vs. N. E.
Worsted Co.*, 11 Met., 570; *Palmer Co. vs. Ferrill*, 17 Pick.,
58–66); and that the charge as to the effect of twenty
years user was correct. Angell on Watercourses, §§ 200–
210; *Williams vs. Nelson*, 23 Pick., 141; *Bealey vs. Shaw*,
6 East, 208; *Ricard vs. Williams*, 7 Wheat., 59; *Hill vs.
Crosby*, 2 Pick., 466; 13 N. H., 360; 3 Watts, 308; 2 Munf.,
534; 8 Shep., 220; 9 Wis., 166, and cases cited; 4 Wash.
C. C. R., 601; 3 Kent's Comm., 442; R. S., chap. 138, sec. 2.

*By the Court*, Dixon, C. J. We see no error for which   June 18.
the judgment in this case should be reversed. The appel-
lant's offer to show that the water in the dam infects the at-
mosphere in the neighborhood of his residence with noxious
vapors and produces sickness in his family, for the purpose
of proving that the dam is raised too high, was properly re-
jected. It is obviously the policy and object of the statute,
to give the owner whose land has actually been overflowed
or otherwise directly injured by the raising of the water,
compensation for such injuries to the land. The fourth sec-
tion declares that " any person whose land is overflowed or
otherwise injured by such dam, may obtain compensation
therefor, upon his complaint before the circuit court for
the county where the land or any part thereof lies." This
section undoubtedly provides a remedy for all injuries
to the land itself, whether directly, by overflowing it, or in-
directly, by rendering it less productive and useful to the
owner. But it goes no further. It clearly does not include
damages sustained by the corruption of the air, which has

no connection with and does not affect the fertility and productiveness of the soil. It is to the "person whose land is overflowed or otherwise injured" that the remedy is given. The case supposed by Chief Justice SHAW, in *Eames vs. New England Worsted Company*, 11 Metcalf, 570, which was an action brought under a similar statute, sufficiently exposes the fallacy of the position of the appellant's counsel on this question. In addition to the damage done to the complainant's land by the action of the water, either by flowing over it and destroying the grass and other products, or by being absorbed into and percolating through it under the surface, so as to render it less productive, the complainant offered evidence to prove that the flowed land, when the water was drawn off, emitted noxious and offensive smells, and thus occasioned damage to the lands of the complainant other than those flowed or rendered unproductive, but contiguous thereto. The court held that this evidence could not be received, and the Chief Justice, in argument, says: "One mode of testing this is to suppose a case where the meadows and the adjacent upland affected by offensive smells, instead of belonging to the same proprietor, are held by different owners. Close No. 1 belongs to A, and No. 2 to B. The former is meadow, and flowed; the latter is upland, so elevated and so distant that it is not reached, directly or indirectly, by water, but in consequence of its vicinity to the flowed land, it is affected by offensive smells and is thereby rendered less desirable for building lots. It appears to us clear that B could have no remedy under the mill act. And we think that the result cannot be different where both parcels of land belong to the same proprietor?" It is very evident that evidence of such damages cannot be received for any purpose in an action under the statute. If the erection and continuance of the dam be a private nuisance, the remedy is by action at the common law and not under the statute.

That a grant will be presumed, by analogy to the statute of limitations, after twenty years peaceable and interrupted adverse enjoyment, is too well settled to admit of controversy. The instructions were, in this respect, correct. And

as the jury must have found under them, either that the appellant's land was not flowed or injured by means of the dam, or that the dam had been maintained at the same height for the period of twenty years next before the commencement of the action, the consideration of the other exceptions becomes unnecessary. The appellant, having no cause of action, could not have been injured by any rule of damages, however erroneous it may have been.

Judgment affirmed.