RUEHL vs. VOIGHT and others.

FLOWAGE OF LANDS — STATUTE OF LIMITATIONS: (1) *Chap.* 184, *Laws of 1862, held to apply to the Mill Dam Law of* 1840, *and to special charters authorizing dams.* (2) *Validity, and* (3) *Construction of the act.*

1. The provision of ch. 184, Laws of 1862, that no action for the flowing of lands shall be maintained when it shall appear that said lands have been flowed, by reason of the construction of any mill dam, for the ten years next preceding the commencement of such action — is applicable to dams built under the Mill Dam Law of 1840, or under special charter.
2. Even if a special charter for the erection of a dam could be regarded as creating a contract between the land-owner and the dam-owner, the legislature might, by a subsequent act, limit the time within which suit must be brought upon such contract, provided only that a reasonable time *after* the passage of the act were allowed for commencing the suit.
3. Under said chapter 184, a flowage of the land for ten years, by means of a dam, without any claim for damages (such flowage being adverse and not permissive) bars any action for such damages. So *held* where the damages claimed were merely those accruing during the *three years* immediately prior to the action.

APPEAL from the Circuit Court for *Dodge* County.

The complaint alleges that the plaintiff is the owner in fee of certain described lands, and has owned and been in possession of them for more than three years next prior to the filing of the complaint; that the lands are situate near Rock river, a public highway and navigable stream, across which, below these lands, the defendants, during said period of three years, have kept and used a water-mill and mill-dam, and have so kept and maintained the same by virtue of an act of the territorial legislature of Wisconsin, entitled "an act to authorize John Hustis to build and maintain a dam on Rock river, and for other purposes," approved February 24, 1845, which the plaintiff refers to and makes part of his complaint; that this mill-dam is of an unreasonable height, to-wit, of the height of nine feet and more, and higher than the defendants have any

right to maintain the same; and that it has, for the period mentioned, caused the waters of Rock river to overflow its natural banks, and to flood the plaintiff's lands, rendering them unfit for use. Prayer, for an assessment, under the statute, of damages sustained within said period of three years, and for a determination as to how much the dam should be lowered.

The answer contains three defenses. The third defense sets up that the defendants derive their interest in said mill-dam and water-power, through mesne conveyances, from one John Hustis; that he erected the mill-dam more than ten years before the commencement of the action; and that the same has been ever since maintained by him, and those claiming under him, at the same height as at present; that plaintiff's lands have been flowed and injured for the said ten years to as great extent as now, and as in the last three years before suit was commenced; that the dam and water-power, and the flowing of plaintiff's lands, have for the ten years mentioned been held and enjoyed by the defendants and the persons under whom they claim, adversely to the plaintiff and all other persons; wherefore the defendants demand that the complaint be dismissed, and that the dam be established permanently by the judgment of the court.

The plaintiff demurred to this defense; and from an order sustaining the demurrer the defendants appealed.

*L. T. Fribert*, for appellants, contended that the defense was sufficient under chap. 184, Laws of 1862. *Rooker v. Perkins*, 14 Wis., 79.

*J. M. Gillet*, for respondent:

The charter (act of February 24, 1845) was a contract, binding upon the land owner and the owner of the dam. The state, in its sovereignty, acting for both parties, contracted and agreed that Hustis might flow the plaintiff's lands upon condition that he should pay the damages occasioned thereby, and that the plaintiff should have compensation in case of such flowing. An act of the legislature may be a contract. 5 Ohio St., 361;

Bouvier's Dic., "Contract." This court has in many cases asserted the doctrine, that a law granting rights or privileges is a contract, as in case of the right to entry of school lands (4 Wis., 414); railroad charters (3 Wis., 287 and 603); and acts providing for laborers' liens. *Streubel v. Mil. & Miss. R. R. Co.*, 12 Wis., 67. This charter to Hustis imposed upon him and his sucessors the obligation to pay damages in the mode prescribed by the Mill Dam Law, *i. e., from year to year, for so long as the dam should be maintained,* unless he should pay the same in gross, at his election. No limitation can be interposed or be available against the claim of the plaintiff. (1.) Because the entry was under a license or agreement from the plaintiff, and not adversely. Limitation and prescription are founded upon adverse possession. Angell on Watercourses, secs. 209, 210. True, the plea alleges that the enjoyment was "adverse;" but that is not to be taken as true in the legal sense of "adverse," because the answer claims under John Hustis and under his charter. (2.) No limitation could be imposed upon the future annual compensation to which the plaintiff might be entitled, without giving time for bringing an action. The plaintiff contracted that he would not claim at any time more than three years' past damages, and at the same time Hustis agreed that he would for all future time, or during the time of maintaining the dam, pay the damages accruing for three years next before complaint filed therefor. If he had claimed damages for ten years before suit was brought, the limitation would be good for the first seven years claimed, and bad for the last three. (3.) The law of 1862, chap. 184, is not applicable to dams built under the Mill Dam Law of 1840, or under special charters, because they are to be regulated by the laws under which they were erected. But, if applicable at all, it would apply to damages theretofore accrued, or to accrue within one year thereafter. The party suffering damages had, by the terms of the act, one year after its passage to bring suit. It could not, therefore, apply to future accruing damages. (4.)

Suppose the plaintiff had brought suit each year from the time of the flowing down to the year for which the suit was brought, and that the defendants had paid the judgments, or that the defendants had voluntarily paid the damages, could it be claimed that the legislature could take away the present right of action? Clearly not. To make the third answer a legal defense, it must therefore aver (which it does not) that no damages had been paid, and no suit brought.

The case of *Rooker v. Perkins*, 14 Wis., 79, turned mainly upon the question, whether certain alleged consequential damages were recoverable in such a proceeding; and the question of limitation was not at all discussed, but it was held that, by analogy to the statute of limitations, a *grant* would be presumed after twenty years peaceable and uninterrupted *adverse* possession. We contend here that there cannot be any adverse possession or limitation under the mill-dam law, because the entry is under contract, and by license. *Tinkham v. Arnold*, 3 Me., 120. In the case of *Pumpelly v. Green Bay and Mississippi Canal Company*, argued before the United States Circuit Court at Milwaukee, that court held bad, on demurrer, a plea setting up this law of 1862. That law is unconstitutional, because it impairs the obligation of the contract between the plaintiff and defendants, made by the mill-dam law of 1840. The law of 1840, by its own terms, created the only limitation which the defendants can set up, to wit, a prohibition against recovering damages for more than three years next prior to the commencement of the action. The act of 1862 is an attempt to wipe out all claims of land owners by one sweeping provision, irrespective of the conditions under which the flowing may have been maintained, whether adversely, under license, with acquiescence, under claim of right, or otherwise.

Cole, J. It appears to us that little more need be said in this case than to cite the statute of 1862, chap. 184. That statute declares that no action for the flowing of lands shall be main-

tained in any court in this state, when it shall appear that said lands have been flowed by reason of the construction or erection of any mill dam for the ten years next preceding the commencement of such action. This is obviously a statute of limitations applicable to this class of actions. It is suggested on the brief of the counsel for the plaintiff, that this statute is not applicable to dams built under the mill dam law of 1840, or under special charters like the case before us. We are unable to concur in this view. The language of the statute is clear, precise and comprehensive, and bars every action where the lands have been flowed for ten years without any claim for damages. The statute means this, or it has no meaning whatever. True, in this case it appears that the dam was erected under a special charter of the legislature; and it is said that this charter was in the nature of a contract binding upon the land owner and the owner of the dam. For the purposes of the argument we will assume that this is a correct view of the charter; and how does it help the case? It must, we think, be admitted that the legislature has the power to restrict the right to bring suits upon contracts express or implied. It has exercised this power in other cases, and the validity of limitation statutes cannot be questioned.

Of course, the legislature cannot pass an act by which a past right of action shall be barred, without any allowance of time for bringing the suit. It must afford a reasonable opportunity to bring the action before the bar will apply. With this qualification, the legislature may restrict the time for bringing actions on contracts as it may think proper. It has certainly, in chap. 184, limited the right of action for damages caused by the flowage of lands to ten years after the right of action accrues.

The third defense in the answer alleges, in substance, that the lands of the plaintiff have been flowed by the dam for more than ten years next preceding the commencement of the action, as much and to as great an extent as when the suit was instituted; and that this right of flowage of the plaintiff's lands has been enjoyed by the defendants, and those persons under whom

they claim title to the dam, for more than ten years, adversely to the right of the plaintiff. Such a flowage for that period, free from any claim for damages on the part of the plaintiff, bars the action. *Rooker v. Perkins,* 14 Wis., 79. I have examined the case of *Tinkham v. Arnold,* 3 Maine, 120, to which we were referred for a correct exposition of the law on the question before us; but that decision is manifestly inapplicable, even if it stood an unquestioned authority, as it certainly does not. See *Williams v. Nelson,* 23 Pick., 141. It does not appear that they had in Maine, when *Tinkham v. Arnold* was decided, a statute like chap. 184, which bars an action for damages for the flowing of lands after ten years from the time the cause of action accrued.

The demurrer to the third defense set forth in the answer should have been overruled.

*By the Court.* — The order of the circuit court is reversed, and the cause remanded for further proceedings according to law.