## FRYER AND WIFE VS. WARNE.

*Injunction.  License.  Prescription.  Watercourse.*

| 29 | 511 |
|----|-----|
| 80 | 646 |
| 29 | 511 |
| 84 | 445 |
| 29 | 511 |
| 94 | 470 |
| 29 | 511 |
| 99 | 182 |
| 29 | 511 |
| 100 | 323 |
| 100 | 332 |
| 29 | 511 |
| 109 | 297 |

1. A pond of surface water on plaintiff's land, after heavy rains discharged a part of its waters along a certain line over defendant's land; and, by defendant's permission, plaintiffs dug a ditch along such line; but it does not appear that such line of discharge, before the digging of the ditch, had any fixed *bed* or *banks*, and the water did not usually flow therein. *Held,* that neither the original nor the artificial channel was a "watercourse." *Hoyt & Hudson,* 27 Wis., 656, followed.

2. The complaint for an injunction against filling said ditch, not averring that the natural flow of the water, as it existed before the ditch was dug, will be interfered with by such filling, statements to that effect in affidavits filed on a motion to dissolve the injunction, are not to be regarded.

3. Parol licenses by defendant and his grantors to plaintiffs to dig and maintain such ditch, in consequence of which plaintiffs went to a considerable expense in doing so, *held* revocable at will. *French v. Owen,* (2 Wis., 250), and *Clute v. Carr* (20 id., 531), followed.

4. The maintenance of such ditch by plaintiffs, not being *adverse* (but under license) nor continued for *twenty* years, conferred no prescriptive right. R. S., ch. 138, secs. 8–10.

APPEAL from the Circuit Court for *Jefferson* County.

This is an appeal from an order of the circuit court dissolving an injunction which had been previously granted to restrain the defendant from filling a ditch upon his own land, through which the water flows from the land of the plaintiff *Mrs. Fryer.*

The complaint and the affidavits on which the injunction was allowed and afterwards dissolved, show the existence of the following facts; *Mrs. Fryer* is the owner of certain land in section 32, town 5, range 15, in the county of Jefferson; and the defendant is the owner of certain land adjoining that of *Mrs. Fryer,* in section 5, town 4 of the same range, in the county of Walworth.  On the land of *Mrs. Fryer* there is a depression of the surface; and the basin or hollow formed thereby, in times of high water and after considerable rains, is filled with water, which, when it overflows, naturally runs off across the land of the defendant to Whitewater creek.

In 1853, a parol agreement between the plaintiff *Nelson Fryer*, who then owned the land in section 32, and one Sikes, who then occupied, and (as it is claimed), owned the land in section 5, was made and executed, whereby the ditch in question was dug upon both tracts of land, which drained the water from the pond formed by the hollow or basin on the land now owned by *Mrs. Fryer*, across the land now owned by the defendant, to the creek. This ditch also drained the water from a similar pond on the latter tract. Sikes paid for digging the whole of the ditch, and *Fryer* boarded the men who did the work at his own expense. In 1859, one Alexander Graham, who, it is claimed, was then the owner of the land in section 5, gave a parol license to *Mrs. Fryer*, who in the meantime had become the owner of the land in section 32, to clean out and deepen such ditch on his land; and pursuant thereto the plaintiffs did clean out and deepen the same at considerable expense. In 1866, and after the defendant became the owner of the land in section 5, he also gave the plaintiffs license to clean out and deepen the ditch, and they accordingly did so, incurring thereby additional expense.

The ditch was dug along and near the line where the water from the pond on *Mrs. Fryer's* land naturally flows when such pond overflows its banks; and the complaint alleges that such line or channel is a natural water-course. The ditch so drains *Mrs. Fryer's* land that its value and productiveness is greatly increased thereby.

The testimony bearing upon the question as to whether such line or channel is a watercourse, is as follows: The plaintiff *Nelson Fryer* deposed that "there was always a natural water-course near the ditch in controversy, and that when it was wet the water always ran from plaintiffs' land across the defendant's, near the line of said ditch, but there never was nor is now any permanent stream of water, because there are no springs to feed the same." John Peacock says: "There was an old channel running near where the ditch now is;" and further: "There

was a small pond or water-hole on defendant's land at high water, which this ditch drained also." Wm. Mulks says: "From the high-water pond on plaintiffs' land, there was a nat-ural channel across defendant's land, near where the ditch in controversy is, and said pond, when it was full enough, drained across defendant's land in said old channel." And the de-fendant, by his affidavit, "denies that there is any natural channel or water-course along or near the line of said ditch," and avers that "the said pond-hole on said plaintiffs' land is naturally without any water-course running therefrom, except when it is filled so full by heavy rains as to overflow its natural banks."

In 1870, the defendant commenced to fill the ditch on his own land, and would have entirely filled the same had he not been restrained therefrom by the injunctional order. The filling of the ditch would greatly injure the land of *Mrs. Fryer*, but the complaint does not allege that her land would be in any worse condition after the ditch should be so filled than it would have been in had such ditch never been dug.

*Weymouth & Porter*, for appellants.

The case shows that there was a natural, well defined channel, though not a perpetual stream, and the doctrine as to surface-water does not apply. *Bassett v. Salisbury Manufacturing Co.*, 43 N. H., 569; *Gillhan v. Madison Co. R. R. Co.*, 43 Ill., 484; *Ashley v. Wolcott*, 11 Cush., 192; *Luther v. Winisimmet Co.*, 9 id., 171; *Buffum v. Harris*, 5 R. I., 243; *Ellis v. Duncan*, 21 Barb., 230; *Gillett v. Johnson*, 30 Conn., 180. The deepening and straightening of the old channel gave the defendant no greater right to stop the flow of the water from plaintiffs' land than he had before. 2. By encouraging the plaintiffs to lay out money in maintaining the ditch under the parol license, the defendant estopped himself from denying the plaintiffs' right to have it kept open. *Gray v. Bartlett*, 20 Pick., 186; *Waffle v. N. Y. Central R. R. Co.*, 58 Barb., 413. 3. The filling up of this channel was no improvement of his own land, but it injured

the plaintiffs, and was malicious; and he is responsible therefor. *Chatfield v. Wilson*, 28 Vt., 49; *Wheatley v. Baugh*, 25 Pa. St., 532; *Swett v. Cutts*, Am. Law Rep., January 1872 and notes. 4. The plaintiffs have acquired a prescriptive right to run off the water in this ditch by seventeen years visible, recognized user.

*T. D. Weeks* and *I. C. Sloan*, for respondents:

1. The plaintiff's claim is for interference with the flow of surface water merely, and not of a natural stream. A right to enter upon the defendant's land to keep the ditch open cannot be conferred by parol. *Hewlins v. Shippam*, 5 B. & C., 221; Angell on Watercourses, §§ 169, 170; *Fitch v. Seymour*, 9 Metc., 462; *French v. Owen*, 2 Wis., 250; *Thompson v. Gregory*, 4 Johns., 81. 2. A parol license to cut and maintain a ditch upon the land of another is revocable at will (*Cocker v. Cowper*, 1 Crompt. M. & R., 418; Washburn on Easements, 23, 24; *Selden v. Del. & Hud. Canal*, 29 N. Y., 639; *Drake v. Wells*, 11 Allen, 141–144; *Foot v. N. H. & N. Co.*, 23 Conn., 223; *Bridges v. Purcell*, 1 Dev. & Bat., 492–497; *Trammell v. Trammell*, 11 Rich., 471; *Foster v. Browning*, 4 R. I., 47; *Hazleton v. Putnam*, 3 Chand., 117; *Woodward v. Seely*, 11 Ill., 157; *Carleton v. Redington*, 1 Foster, 308; 1 Wash. R. P. 411) — even after there has been enjoyment under it. Washburn on Easements, (2d ed.), 380, 650; *Fentiman v. Smith*, 4 East., 107; *Mumford v. Whitney*, 15 Wend., 380; *Cook v. Stearns*, 11 Mass., 533; *Sampson v. Burnside*, 13 N. H., 264; *Wood v. Leadbitter*, 13 Mees. & W., 838; 3 Kent. Com., 452, and note A. 3. The affidavit of the defendant positively denies giving any such license, and alleges that the other parties, claimed to have given license, had no title. The injunction was, therefore, properly dissolved.

LYON, J. It is contended on behalf of the plaintiffs:

I. That the line or channel along which the water from *Mrs. Fryer's* land originally flowed across the land of the defendant was a natural water course; and that the ditch having been

adopted in place thereof by the former and present owners of the respective lands, became thereby a water course, which the defendant cannot lawfully obstruct to the injury of *Mrs. Fryer.*

II. If not a water course, the various licenses from occupants and alleged owners of the lands in section 5, to construct, clean out and open the ditch, and the expenditures by the plaintiffs pursuant thereto, operate as a valid grant of the right to maintain and use such ditch perpetually, or at least estop the defendant from denying that such grant exists.

III. That *Mrs. Fryer* has a prescriptive right to maintain and use this ditch, growing out of a visible, recognized user thereof for more than ten years.

These propositions will be considered in their order.

I. Was such original line or channel a watercourse? Angell, in his excellent treatise on the subject, says: "A watercourse consists of *bed, banks* and *water*; yet the water need not flow continually; and there are many watercourses which are *sometimes* dry. There is, however, a distinction to be taken in law between a regular flowing stream of water, which at certain seasons is dried up, and those occasional bursts of water, which, in times of freshet, or melting of ice and snow, descend from the hills and inundate the country. To maintain the right to a watercourse or brook it must be made to appear that the water usually flows in a certain direction, and by a regular channel with banks and sides. It need not be. shown to flow continually, as stated above, and it may at times be dry; but it must have a well defined and substantial existence. A mere right of drainage over the general surface of land is very different from the right to the flow of a stream or brook across the premises of another." Angell on Watercourses, § 4. This definition was substantially adopted by this court in *Hoyt v. The City of Hudson*, 27 Wis., 656; and the cases on the subject, including all those cited by the learned counsel for the plaintiffs, with great unanimity hold that it is the legal definition of a watercourse.

The evidence upon which the circuit court made the order dissolving the injunction fails to show that the channel in question was a watercourse. It does not satisfactorily appear that it had *bed* or *banks*, and it affirmatively appears that there is also wanting the *usual* flow of water, which is an essential element of a watercourse. Indeed, the flow of water in such channel is the exception and not the rule. It occurs only in times of freshets, or after considerable rains, and is exclusively surface water. The evidence of the existence of a watercourse is no stronger than it was in the case of *Hoyt v. The City of Hudson*, and we held that there was no watercourse as claimed by the plaintiff in that action.

The original channel not being a watercourse, it follows necessarily that a ditch, which was substituted therefor, is not a watercourse.

It may be observed here that the question of the right of the defendant to interrupt the natural flow of the surface water from the land of *Mrs. Fryer*, and thus throw it back upon her land, is not in the case. The averment in the complaint is, that the defendant was about to stop "the natural channel of said watercourse *so deepened and improved by the plaintiff*," etc. It contains no direct averment that the filling of the ditch will interrupt the natural flow of the surface water as it flowed before the ditch was dug, or that it will render the condition of *Mrs. Fryer's* land any worse than it would have been had the ditch never been dug. It is true, there are statements in some of the affidavits tending to show that such would be the result of filling the ditch; but, in the absence of averments to that effect in the complaint, those statements have no significance in the case.

II. Were these alleged parol licences revocable by the defendant at his pleasure? This question has been answered in the affirmative by at least two decisions of this court, and is no longer open for discussion in this state. *French v. Owen*, 2 Wis., 250; *Clute v. Carr*, 20 id., 531. See also *Hazelton v. Put-*

*nam*, 3 Chand., 117. It is quite unnecessary to refer to the adjudications of other courts on this question.

If those licenses were ever valid, the defendant revoked them, as he lawfully might do, and the fact that they had been given did not interfere with his right to fill the ditch.

III. There are two insuperable obstacles to the successful assertion of the claim of *Mrs. Fryer* that she has a prescriptive right to maintain and use the ditch in question. By analogy to the statute of limitations (R. S., ch. 138, secs. 8, 9 and 10), to constitute a valid prescription, *Mrs. Fryer* and her grantors must have been in the peaceable and uninterrupted *adverse* enjoyment of this easement on the land of the defendant for *twenty* years. Here the user was not *adverse*, but *permissive;* and had it been adverse, it was for a period of less than twenty years. *Rooker v. Perkins*, 14 Wis., 79.

The order of the circuit court, dissolving the injunction, must be affirmed.

*By the Court.*—Order affirmed.