# CASES DETERMINED

## January Term, 1875.

---

CObb and another vs. Smith and others.

38     21
59 LRA 845n
59 LRA 860n
59 LRA  862
59 LRA  877
59 LRA  894

Mill Dams; Flowage of Land. (1) *Res adjudicata.* (2) *Proper defendants.* (3) *Pleadings.* *Judgment rightly taken against all the defendants.* (8) *Judgment in the alternative.*
Statutory Bar. (4) *Flowage must have been adverse. That term defined.*
Damages. (5) *Recoverable only to commencement of action, not to verdict.* (6) *Freshets.* (7) *Obstructing flow of water from springs on the land.*

1. In a former action between these parties, plaintiffs alleged that they were the owners of certain lands flowed by defendants' dam, and recovered damages for such flowage. 26 Wis., 231. *Held*, that plaintiffs' title to said lands was a *material issue* in that action, and is *res adjudicata* by the judgment therein.
2. In an action for damages resulting from the maintenance of a nuisance (in this case a dam flowing plaintiffs' land), persons who acquired title, after the creation of the nuisance, to the land on which it is situate, and by whose authority it has been continued, are proper parties defendant.
3. In an action against A. H. S., his wife A. M. C. S., and one M. as "trustee of the separate estate" of the latter, the complaint avers that "said defendants" own the land on which the dam in question is built, and that, since a certain day, they have wrongfully maintained, and still maintain, said dam. The answer denies that the dam has been and is wrongfully maintained by said defendants, and alleges that it was erected by A. H. S. and another person (not a party), and is maintained by their grantees, successors and assigns, by virtue of certain statutes, and that A. H. S. and wife have had no legal title to

the land on which the dam is built, since the date named in the complaint, but such title is in said M., trustee, etc. Without otherwise denying that the dam has been and is maintained by all the defendants, it sets up several defenses, and asks judgment that "the said defendants," etc., have the right to forever maintain said dam upon equitable conditions. The terms of the trust deed to M. do not appear. *Held*, that, upon a determination of plaintiffs' right to a recovery, judgment was properly rendered against *all* of the defendants.

4. To establish a prescriptive right to flow land under ch. 184, Laws of 1872, the flowage must have been continued *adversely* for the period of ten years, *with the acquiescence* of the land owner; and the bar of the statute does not apply where such owner, during the statutory period, has asserted his rights by actions to abate the dam or to recover damages for the flowage.

5. The damages recoverable for the flowage of land are only such as had accrued *before the commencement of the action;* and those accruing between action commenced and verdict rendered, may therefore be recovered in a subsequent suit.

6. The court refused to instruct the jury that, if the dam did not injure plaintiffs' land "except in time of freshets and in consequence thereof," the action could not be maintained; and it charged that defendants were liable for damages done the land, not only in the ordinary stage of the water, but also in the higher stages arising from "freshets which ordinarily occur at certain seasons of the year;" but not for damages "occasioned by some extraordinary flood, unusual and unexpected, and which was either unprecedented, or the like of which had only occurred at such long and irregular intervals" that it "would not be anticipated by men of ordinary prudence in their business calculations." *Held*, no error.

7. There being springs on plaintiffs' land, whose waters were usually discharged by a brook running through the land into the river in which defendants' dam was built, there was no error in refusing to charge that defendants were not liable for damage to the land caused by the waters of said springs, nor in charging that they were liable for damage caused by obstructing the natural flow of the brook and setting back its waters on the land.

8. On defendants' appeal, this court affirms a judgment in the alternative that the defendants pay certain damages for the past injury, with costs, and that the dam be abated, or that, on their paying a certain sum, with interest and costs, they and their assigns have a perpetual right, as against the plaintiffs, to maintain the dam at its present height, and plaintiffs be perpetually enjoined from enforcing the judgment for its removal.

APPEAL from the Circuit Court for *Walworth* County.

Action against *A. Hyatt Smith, Ann M. C. Smith,* his wife, and *Charles D. Mead,* trustee of the separate estate of *Mrs. Smith,* for flowage of plaintiffs' land by a dam on Rock river. The action was commenced April 12, 1869, in Rock county, and was removed to Walworth county.

The complaint, after averring plaintiffs' ownership, since 1860, of certain lands situate near Rock river, alleges that prior to May 28, 1861, a dam had been constructed across said river, below said lands, which caused the waters of the river to flow the lands, etc., to plaintiffs' damage; that on the day last named plaintiffs commenced an action in the circuit court for Rock county against the three persons here made defendants, and Ira Miltimore and Margaret B. Miltimore, to recover damages for such flowage, and on the 23d of August, 1867, recovered judgment in said action against the defendants therein for $200.96, for damages which had accrued prior to the commencement of the action; that on the 1st of July, 1862, plaintiffs commenced another action in the same court, against the same defendants and certain others, to recover damages for injuries to the same lands, caused by said dam, from the time of the commencement of the former action until the commencement of said second action, and recovered judgment thereon, August 24, 1867, against certain of the defendants therein (including all those made defendants in the present action), for a certain sum. It is then further alleged that said *Ann M. C. Smith* is the wife of *A. Hyatt Smith,* and that ever since July 1, 1862, "said defendants herein" have had title in fee simple to the land upon which the dam in question is erected; that ever since the day last named said defendants have wrongfully maintained said dam, and still wrongfully maintain the same; that during all the time last aforesaid said dam has obstructed the natural flow of water in said river, and has caused it to flow plaintiffs' land, to their damage, etc.; and that on or about November 23, 1868, plaintiffs gave defendants

a notice in writing that said dam caused the injuries above described, and that defendants were required to abate said dam so far as it caused such flowage. Judgment is demanded for damages, and for the abatement of the dam so far as it causes the flowage complained of.

The defendants answered jointly: 1. That certain named persons own a part of the water power created by the dam in question, and have the right to draw water from the dam, and are necessary parties to the action. 2. That it is not true that said ·dam has been and now is wrongfully maintained by said defendants; that it was erected by *A. Hyatt Smith* and one Ira Miltimore, and is maintained by their grantees, successors and assigns, by virtue of certain statutes of the legislature and state of Wisconsin, passed in 1848 and 1850; that *A. Hyatt Smith* and said Miltimore commenced in 1848 the erection of the dam, and completed it to its present height in 1852; that ever since that time the dam has been maintained at its present height, by said *Smith* and Miltimore or their grantees; that a woolen factory, mills and other machinery have been erected and maintained by their tenants or grantees, driven by the power created by said dam, and that said factory and most of said mills were erected before 1852; that at least $200,000 have been expended in erecting said dam and the mills and· machinery thereon; that plaintiffs' lands were flowed in 1852, to the same extent as they now are, and have been so flowed ever since, except when the dam was injured by floods and was undergoing repairs; and that ever since the erection of the dam plaintiffs have been in the actual occupation of said lands, and well knew that the dam was being erected and maintained, and that large sums of money were being expended as aforesaid, and acquiesced in the same until the commencement of the suits mentioned in the complaint. 3. That since May 28, 1861, *A. Hyatt Smith* and *Ann M. C. Smith* have had no legal title to the lands on which the dam is built, but that the title thereto is in *Charles D. Mead*,

trustee of the separate estate of *Ann M. C. Smith.* 4. That the lands have suffered no material injury from the alleged flowage. 5. That the lands had been flowed, by reason of the erection of said dam, for ten years or more next preceding the commencement of the action, to wit, from 1852 until this action was commenced. 6. That the action was not commenced within ten years from the construction of said dam, nor within one year after the passage and publication of the act approved April 2, 1862, entitled " an act to quiet the title to real estate in certain cases therein mentioned." 7. That in the second action by the plaintiffs, commenced July 1, 1862, and mentioned in the complaint herein, it was determined by the judgment of the circuit court, affirmed by this court, that plaintiffs could not maintain an action for the abatement of the dam. [See 16 Wis., 661.] Prayer, for judgment of dismissal and for costs; and also " that the said defendants, and each and every of them, their grantees, assigns," etc., may be adjudged to have the right forever to maintain said dam and water power upon such terms as to the court may seem meet and agreeable to equity, and that plaintiffs be debarred from having any judgment to abate said dam ; provided, the said defendants, their grantees, etc., shall pay to the plaintiffs, within some reasonable time, to be fixed by the court, such sum as they may be equitably entitled to recover; and for general relief.

The cause was tried in September, 1872. Instructions asked by the defendants were refused, to the effect that there was no evidence that *Ann M. C. Smith* had ever done any act towards the erection or maintenance of the dam, and that she was entitled to a verdict; as also like instructions concerning *Charles D. Mead.* The court further refused to charge that plaintiffs could not recover if the dam had caused a flowage of the premises to the same injurious extent before they became owners thereof, as since that time; nor if the premises were flowed to the same extent as now for ten years next preceding the commencement of this action ; nor if they were flowed by the

dam for twenty years before this action was commenced, to the same extent as since; nor if the dam did not cause the waters of Rock river to set back or injure the land *except in time of freshets*, and in consequence of them; nor for any damage caused to said land by the waters of any spring or springs that arise on such lands [there being evidence to which such an instruction would have been pertinent]; nor for damages arising to said land prior to verdict in the action brought by plaintiffs in 1861, in which they recovered (in 1867) a judgment against these defendants and others for damages caused to the same land by the same dam. [The instructions embracing these propositions were asked *severally*, and severally denied.]

The court then instructed the jury, in substance, that the defendants were liable for any damages which had been occasioned to plaintiffs' land by the maintenance of the dam in question, since July 1, 1862, caused by said dam obstructing the natural flow of the water in Rock river, and setting it back upon said land, or by obstructing the natural flow of the water in Spring brook, and setting it back upon said land, or preventing the natural drainage of the land through the channel of said brook; and that they were liable for damages so occasioned, not only when the waters of said river and brook were at their ordinary stage, but also in the high stages of water, arising from freshets, which are usual, and ordinarily occur at certain seasons of the year, and which are not extraordinary in their magnitude or duration; but that they were not liable, even though the dam contributed to the injury, for damages occasioned only by some extraordinary flood, unusual and unexpected, or which was either unprecedented, or the like of which had only occurred at such long and irregular intervals that it was not expected, and would not be anticipated by men of ordinary prudence in their business calculations. The jury were further instructed that if the lands in question had been injured by said dam within the times laid in the complaint, plaintiffs were entitled to a verdict for the injury so done to a

certain part of said lands (described as " lying east of the Beloit road "), from July 1, 1862, to May 28, 1869; * and for injury done to another part of the lands (described as " lying west of the Beloit road"), from July 1, 1862, to January 22, 1867, on which day said land was conveyed by plaintiffs to one Doty ; and that if they found for the plaintiffs upon this general question, they should also find specially upon the following questions : 1. What damages plaintiffs had sustained by reason of the flowage of their said land east of the Beloit road, caused by said dam, from May 28, 1869,* to the date of the verdict. 2. How much less (if any) plaintiffs' said land west of the Beloit · road was worth on the 22d of January, 1867, than it would have been if the dam had been removed and the waters of Rock river and Spring brook left to flow in their natural channels. 3. How much (if any) less plaintiffs' said land east of the Beloit road was worth on the day of the verdict than it would be worth with said dam removed.

On the general question thus submitted to them, the jury found for the plaintiff, and that their damages were $912.50. By their findings on the three special issues above described, they estimated for damages and diminished values the sums, respectively, of $375, $150, and $1,500. The judge of the court afterwards filed his findings, stating the facts as to plaintiffs' ownership of the lands in question, and the damages, etc., as found by the jury, and also stating as facts, 1. That a dam was commenced in 1848, by *A. Hyatt Smith* and Ira Miltimore, in Rock river, below plaintiffs' said lands, and was gradually built up until it reached the present height in 1851 ; that in that year it was swept away by a flood ; that soon after the present dam was commenced in the same place ; and that this was gradually built up until it reached its present height in

---

*The reporter finds nothing in the papers to explain this date, and supposes it to have been used, by an oversight, for April 12, 1869, the date of the commencement of this action, especially as, in the findings of the court, the damages are determined with reference to the latter date.

1858.   2. That since the first day of July, 1862, the legal title in fee simple to said dam, the lands on which it was situated, and the water power created thereby, has been in *A. Hyatt Smith* and *Charles D. Mead*, trustee, etc.; that said *Mead* has held the title as trustee of the separate estate of *Ann M. C. Smith*, who is the equitable owner thereof; that said *Ann M. C. Smith*, ever since the date above named, has been the wife of *A. Hyatt Smith;* and that the said defendants have maintained the dam during the time mentioned.   3. That improvements, consisting of a woolen factory, flouring mill, etc., to the value of $150,000, had been erected upon said water power, and would be rendered of little value if the dam were taken out.   Upon these facts the court directed that judgment be entered that plaintiff recover of defendants $912.50 damages, and the costs of the action, and that the dam be abated; but if defendants should pay the plaintiffs $2,937.50, with interest and costs, within three months from the entry of the judgment, then that plaintiffs be perpetually enjoined from enforcing the judgment for the removal of the dam or any part thereof, and that defendants, their successors and assigns, have a perpetual right to maintain the dam at its existing height, so far as plaintiffs and their said lands are concerned.

Before the entry of judgment, the defendants moved to set aside the general verdict and the special findings of fact, on the grounds, among others, that the damages found by the jury were excessive; that there was no joint right of action in the plaintiffs, nor any right of action in either of them, shown by the evidence; and that no joint liability of the defendants had been shown.   The motion was denied; and judgment was entered in accordance with the decision of the court as above stated.   From this judgment the defendants appealed.

*Bennett & Sale*, with *A. Hyatt Smith*, of counsel, for appellants, argued, *inter alia*, 1. That plaintiffs had shown no title to the lands alleged to be injured. 2. That no cause of action was shown against *Mrs. Smith* or her trustee, *Mead*.

There was no evidence tending to show that *Mrs. Smith*, either directly or indirectly, ever did any act towards making or maintaining the dam and water power in question, or that she or *Mead* did or authorized any act by which plaintiffs' land was injured; or that she even *knew* of such an act being done by others; or even that *Mead* was ever in this state. If it had been shown that *Mead* had in any way helped erect or maintain the dam, while such an act might make him a wrongdoer as against the plaintiffs, it would not make him liable as trustee, much less his *cestui que trust*, who could not control her equitable estate except through the aid of a court of equity. 15 Wis., 502. And had she been present aiding and abetting her husband in building the dam, the legal presumption would have been that she was acting by compulsion, and she would not have been legally responsible for her act. 2 Kent, 137; *Wagoner v. Bill*, 19 Barb., 323. It may be urged that there was no trust deed in evidence. But if any interest whatever is shown in her, it is, that she is *cestui que trust* and *Mead* her trustee. If this is not so, then she has no interest, and cannot be liable. 3. That plaintiffs could not recover for any damage accruing before the *rendition of the verdict* in their previous action, brought in 1861, and tried in 1867. They were entitled in that suit to have their damages assessed to the day of trial, and must be presumed to have availed themselves of the right. *Birchard v. Booth*, 4 Wis., 67, 75; *Weisenberg v. Appleton*, 26 id., 57; *Vandervoort v. Gould*, 36 N. Y., 639–646; 2 Greenl. Ev., § 268, note 4. 4. That defendants were barred by the statute of limitations found in the Laws of 1862, ch. 184, sec. 1 (Tay. Stats., 1629, § 45).* The statute, by its

---

* This statute reads as follows: "No action for the recovery of damages for the flowing of lands shall be maintained in any court in this state when it shall appear that said lands have been flowed by reason of the construction or erection of any mill dam for the ten years next preceding the commencement of such action: *provided*, any party shall have one year from and after the passage of this act, in which to com-

terms, clearly covers the case.  *Haag v. Delorme*, 30 Wis., 591. And it ought to be applied according to the fair and obvious import of its language, and not to be repealed or defeated by interpretation.  Angell on Lim., §§ 23, 211, 380 ; *Green v. Johnson*, 3 Gill & J., 394 ; *Fisher v. Harnden*, 1 Paine C. C., 61 ; *Bell v. Morrison*, 1 Pet., 360 ; *McCluny v. Silliman*, 3 id., 270 ; *Hellings v. Shaw*, 7 Taunt., 608 ; *Chase v. Whiting*, 30 Wis., 544.

*I. C. Sloan*, for respondents, contended, 1. That former recoveries in actions between these parties (15 Wis., 101 ; 16 id., 661 ; 23 id., 261 ; 26 id., 582) estop defendants from denying plaintiffs' title to the lands alleged to be flowed, and are conclusive upon all the questions involved in this case, except the amount of damages.  *Jones v. Weathersbee*, 4 Strob., 50 ; *Kilheffer v. Herr*, 17 S. & R., 319 ; *Adams v. Pearson*, 7 Pick., 341 ; *Beloit v. Morgan*, 7 Wall., 619 ; *Danaher v. Prentiss*, 22 Wis., 311 ; *Supervisors v. Mineral Point R'y Co.*, 24 id., 93 ; *Shepardson v. Cary*, 29 id., 34.    2. That judgment was properly rendered against all the defendants.  There is no question as to the liability of *A. Hyatt Smith*, as the proof was abundant that he erected and has maintained the dam.  And the rule is well settled, that the successor to the title and possession of property, who omits to abate a nuisance erected thereon by another, is liable for the damages caused by it.  *Brown v. C. & S. R. R. Co.*, 12 N. Y., 486, opinion of Denio, J., p. 492, and cases there cited.  *Mead* and *Mrs. Smith* had ample notice of the injury caused by this dam, having been parties to the former actions.  But no notice was necessary.  *Conhocton S. Co. v. B., N. Y. & E. R. R. Co.*, 52 Barb., 390.  The whole beneficial estate and right of possession was in *Mrs. Smith*.  A judgment to abate the dam would seriously affect her interest ; in fact,

mence an action for the recovery of any lands, tenements or hereditaments heretofore flowed, or for the recovery of the possession thereof, or for damages to the same."

she was the only person who derived a pecuniary benefit from its maintenance. Under the authorities cited, *Mead's* legal estate and *Mrs. Smith's* equitable estate were quite sufficient to render them liable for the continuance of the nuisance; and they were probably both *necessary* parties so far as a judgment to abate the dam was demanded. 3. That plaintiffs' right of action was not barred by ch. 184, Laws of 1862. The flowage for the period limited by the statute must be without any claim for damage on the part of the land owner. *Rooker v. Perkins,* 14 Wis., 79; *Ruehl v. Voight,* 28 id., 158. The use must be with the land owner's knowledge and acquiescence. Washb. Eas., 86, pl. 26, and authorities there cited in note 2; id., 111, pl. 66; 112, pl. 68; *Nichols v. Aylor,* 7 Leigh, 546, 565; *Powell v. Bogg,* 8 Gray, 441; *Levitt v. Nilson,* 3 Bing., 115. 4. That there was no error in permitting a recovery in this action for damages accruing after the commencement of the former action and before verdict therein. "The rule is, that the plaintiff's recovery in an action for nuisance is limited to the commencement of the action." *Blunt v. McCormick,* 3 Denio, 283; *Beckwith v. Griswold,* 29 Barb., 291, and cases there cited; *Troy v. Ch. R. R. Co.,* 3 Foster, 83; *Thayer v. Brooks,* 17 Ohio, 489; *Duncan v. Markley,* 1 Harper, 276.

COLE, J. There can be no doubt of the soundness of the position assumed by plaintiff's counsel, that the defendants are estopped from raising the question of title in this action. That was a question which was distinctly and specifically put in issue by the pleadings in the former suit, and was tried and determined. The judgment there rendered is, upon perfectly well settled principles of law, conclusive upon the defendant. The question of title is no more open to further litigation between the parties, than the amount of recovery, or any other question involved in that suit. It is believed that no authorities need be cited to a proposition of law so elementary in its character and general in its application, as that a judgment of

a court of competent jurisdiction over the subject matter and parties is conclusive upon any matter actually put in issue and necessarily decided in the cause. In the former action the plaintiffs alleged in their complaint that they were the owners and in possession of the lands flowed; and they sought to recover, and did in fact recover, damages against the defendants for overflowing them. 23 Wis., 261. The question of title was a material issue, and must have necessarily been decided with the other questions involved. This sufficiently appears upon the record in that suit. The conclusive effect, then, of the former judgment as to the plaintiffs' title to the land overflowed, cannot be questioned. By an inflexible rule, the defendants are estopped from raising that question in this action, or controverting their title to the land overflowed by the dam or water power in question.

Another point taken by the counsel for the defendants is, that there was no evidence introduced on the trial which tended to show any liability on the part of *Mrs. Ann M. C. Smith*, or of *Charles D. Mead*, trustee of her separate estate, for erecting or maintaining the dam which caused the flowage, and therefore that a nonsuit should have been granted so far as they were concerned. The action is not only for erecting, but for keeping up and maintaining the dam, which obstructs the natural flow of the water and causes the same to set back and overflow the plaintiffs' land. And in the complaint it is alleged, among other things, that the defendant *Ann M. C. Smith* is the wife of *A. Hyatt Smith*, and that the defendants, since July, 1862, to the present time, have had title to the land upon which the dam is erected, and own it and the water power thereby created. The answer states that the dam was originally erected by the defendant *A. Hyatt Smith* and one Ira Miltimore, and is kept up and maintained by their grantees, successors and assigns, by virtue of certain legislative acts therein specified. It is further averred in the answer, that the defendants *A. Hyatt Smith* and *Ann M. C. Smith* have no legal

title to the land upon which the dam now stands and was erected, but that the legal title to the same is in the defendant *Charles D. Mead*, as trustee of the separate estate of *Mrs. Smith*, and has been since May, 1861. The action being for damages resulting from the continuance of the nuisance, as well as for its erection, it is sufficient to show that the injury was caused by the authority of the defendants, or that, having acquired title to the land after the nuisance was erected, they have continued it. In *Slight v. Gutzlaff*, 35 Wis., 675, it was held that when a lessee or grantee continues a nuisance of a nature not essentially unlawful, erected by his lessor or grantor, he is liable to an action for it after notice to reform or abate it. There can be no doubt, under the authorities ancient and modern, that an action lies against him who erects, and against him who continues a nuisance erected by another. The continuance, and every use of that which is, in its erection and use, a nuisance, is a new nuisance, for which the party injured has a remedy for his damages. In addition to the cases cited in *Slight v. Gutzlaff*, see *Staple v. Spring*, 10 Mass., 72 ; *Hodges v. Hodges*, 5 Met., 205 ; *Conhocton Stone Co. v. Buffalo, N. Y. & Erie R'y*, 52 Barb., 390 ; where it is held that an action can be maintained against the party continuing the nuisance, whether he be the original wrongdoer or his alienee.

From the allegations in the answer we must assume that the whole beneficial estate and right of possession to the dam and water power were in *Mrs. Smith*. She, being the party beneficially interested in maintaining the dam, ought to be before the court in a proceeding to abate it. Her rights may be seriously affected by the judgment. And, upon the decisions above cited, undoubtedly both *Mrs. Smith* and *Mead*, the holder of the legal title, are liable for the continuance of the nuisance. They have succeeded to the title of the original wrongdoer, and come within the application of the principle of law established by them. "The right of action is given to indemnify the party injured, and is founded on the wrong of

Cobb and another vs. Smith and others.

the party maintaining the nuisance. If the continuance be a fresh nuisance, then it is a wrongful act done and committed, distinct and independent of the first and original wrongful acts creating the nuisance." *Conhocton Stone Co. v. R'y Co., supra.*

The defendants further set up and rely upon the statute of limitations to defeat the action. It is stated in the answer, that the lands have been flowed by reason of the dam more than ten years next preceding the commencement of the suit. This, it is insisted, constitutes a complete bar under ch. 184, Laws of 1862. The construction which has been given this statute, and which we have no doubt is the correct one, is, that in order to gain a prescriptive right under it, the flowage or use of the land must have continued *adversely* for the period of ten years. *Ruehl v. Voight,* 28 Wis., 153. See also *Rooker v. Perkins,* 14 Wis., 80; *Haag v. Delorme,* 30 id., 591. Now it appears from the pleadings in this case, that the right of the defendants to use or flow the land has been constantly challenged and denied by the plaintiffs. In May, 1861, they commenced an action to recover damages for the injury caused by the dam, and obtained judgment. In 1862, they commenced another action for the same purpose. 23 Wis., 261. Also an action was commenced to abate the dam as a nuisance, and for an injunction to restrain the defendants from rebuilding the same. 16 Wis., 662. By these legal proceedings the plaintiffs have almost from the outset resisted the claim of the defendants to the use of the land, and have attempted to assert and enforce their own rights as owners. They seem to have done everything in their power to vindicate their absolute title and ownership to the lands, and to interrupt the possession of the defendants and prevent it from ripening into a title by lapse of time. All these facts and circumstances rebut all presumption that the use and enjoyment by the defendants have been adverse in any legal sense. "An easement in the land of another can be acquired by adverse user only with the acquiescence of the owner of the land in its exercise under a claim of right, *per patientiam veri domini,*

*qui scivit et non prohibuit, sed permisit de consensu tacito."* Powell
v. *Bogg*, 8 Gray, 441. Prof. Washburn, in his work on Ease-
ments and Servitudes, states the doctrine on the subject as fol-
lows : " In the next place, the use and enjoyment of what is
claimed must have been *adverse, under a claim of right, exclu-
sive, continuous, uninterrupted,* and with the knowledge and ac-
quiescence of the owner of the estate in, over or out of which
the easement prescribed for is claimed, and while such owner
was able in law to assert and enforce his rights, and to resist
such adverse claim if not well founded. And it must, more-
over, be of something which one party could have granted
to the other." Ch. I, sec. IV, pl. 26. In note 2 he cites
many cases in support of the proposition stated in the text ;
and it would be very easy to increase the number to almost
any extent. The pleadings and evidence prove most conclu-
sively that the defendants have not been in the exclusive, un-
interrupted enjoyment of the land flowed, with the acquies-
cence of the plaintiffs, for any period whatever; and there is
no ground for saying that the bar of the statute applies. If
the statute were held to apply to this case, it is manifest that,
by parity of reasoning, it would have to be extended to a case
where the land was flowed under a license or lease from the
owner for ten years. We feel confident in assuming that
the legislature never intended the act of 1862 should have any
such unnatural construction. It was obviously intended to
apply only where the user had been adverse in the legal
sense of the term. This implies acquiescence on the part of
the owner in the use, and not a constant resistance and denial
of the claim.

Another question arising upon the requests asked by the de-
fendants and refused is, whether the former recovery is a bar
to any claim for damages resulting from the flowage prior to
the verdict in that suit. We have already applied the doctrine
of estoppel to the question of plaintiffs' title ; and if damages
might have been recovered, in the former suit, up to the time

the verdict was rendered, instead of up to the time the action was commenced, the same rule would govern in respect to any claim for damages prior to that recovery. But the following cases clearly establish the rule of damages in actions of this kind, and show that the plaintiff can only recover for injuries actually sustained before suit brought: *Blunt v. McCormick*, 3 Denio, 283; *Mahon v. The New York Central R'y*, 24 N. Y., 658; *Beckwith v. Griswold*, 29 Barb., 291; *The Town of Troy v. Cheshire R'y*, 3 Foster, 83; *McKeon v. See*, 4 Robertson, 450; *Thayer v. Brooks*, 17 Ohio, 489; *Duncan v. Markley*, 1 Harper, 276. The reason of this rule is obvious. A person injured by a continuing nuisance has his action for each day the nuisance is maintained. But he cannot recover prospective damages which had not been sustained when the action was commenced, and which cannot be included in his writ. For any future damage, he may recover in an action based upon the continuance of the injurious cause; and in such action it is no answer to say there has been a previous recovery of damages occasioned by the wrongful cause. Every continuance of the nuisance is a fresh one, for which there may be an independent recovery, from time to time after the damages have accrued. And this feature distinguishes the case from *Birchard v. Booth*, 4 Wis., 67; *Weisenberg v. The City of Appleton*, 26 id., 56, and that class of cases, where, if the injury is of a permanent character, the plaintiff is allowed to recover prospective damages because he is only entitled to bring one action. And such cases as *Vandervoort v. Gould*, 36 N. Y., 640, are likewise unlike this, on account of the provision of the statute which enabled a party to unite in the same complaint a claim to recover the possession of real property and a claim for damages for withholding the same. Under the latter claim damages up to the day of the trial were recovered. In the present case, the dam might have been lowered, or the nuisance abated, immediately after the commencement of the former suit; and this furnishes an additional reason for limiting the recovery in that

suit to such damage as had actually happened.    But each day's wrongful continuance of the flowage may occasion further injury, which will form the basis of a new action.

The judgment in the case is in the alternative, that the plaintiffs recover $912.50, damages and costs, for the past injury, and that the dam be abated and removed ; or, upon the defend-. ants paying $2,937.50, with interest and costs, the plaintiffs be perpetually enjoined from enforcing the judgment for a removal of the dam, and that the defendants and their assigns have a perpetual right to maintain it at its present height so far as the plaintiffs are concerned.    This accords with the view taken of the equities of the case when it was formally before this court. 23 Wis., 261.    It was then intimated, as important manufacturing interests were dependent on the continuance of the dam, that a court might properly refuse to abate it upon the defendants making compensation for the entire damages which the plaintiffs had sustained, and which they would sustain by its being maintained at its present height.    The plaintiffs do not complain of the judgment in this form ; and surely it would seem, under the circumstances, that the defendants have no reason to, since it fully protects their rights and interests.

This disposes of all the material questions which we deem it necessary to notice.

*By the Court.* — The judgment of the circuit court is affirmed.

The appellants moved for a rehearing.

COLE, J.    It is claimed, on the motion for a rehearing, that it does not appear that *Mrs. Smith*, or her trustee, ever, in any way, directed, sanctioned or approved of the erection or maintenance of the dam ; and therefore it is insisted that they are under no liability in respect to it.    It seems to us that this position is clearly untenable in view of the pleadings.    The complaint alleges that since July, 1862, the defendants have wrongfully and unlawfully kept up and maintained the dam, and that they still wrongfully maintain it.    Now there is no

disclaimer on the part of *Mrs. Smith*, nor on the part of the trustee, *Mead*, of any interest in the dam. They answer jointly with *A. Hyatt Smith*, only denying the allegation that the dam is wrongfully maintained, and, in effect, claiming that they have the right to maintain it as the grantees and assigns of *Smith*. And their prayer for relief in the amendment to the answer is, that it be adjudged by the court that each " of them, their grantees, assigns, successors, executors, and administrators, may have the right to forever maintain the said dam and water power." How can it be said, in view of these matters, and the allegations referred to in the opinion, that there is nothing to show that either *Mrs. Smith* or her trustee has sanctioned or approved of the erection or maintenance of the dam ; that they do not seek to have the benefit of it ; and that they are not responsible for the injury caused by its continuance ? It is said that *Mrs. Smith* has no interest or estate in the lands on which the dam is erected, but that the whole estate is vested in the trustee. Why, then, did she not disclaim, and say that she had no interest in the subject matter of the litigation ? We do not know the nature of the trust created by the conveyance of the legal title to *Mead*, the trustee. We have no information upon that subject. All we know is, that both *Mrs. Smith* and the trustee are made defendants to the action, and, with their codefendant, are charged with the responsibility of keeping up the dam. This they do not deny, but practically admit, and ask the court to adjudge that they have the right thus to maintain the dam and water power.

The court charged that the defendants were not liable for injuries occasioned only by some extraordinary flood, unusual and unexpected ; and this stated the rule of law sufficiently favorably for the defendants. There was no error in refusing the request upon that point.

The other points made on the motion for a rehearing are sufficiently considered in the opinion, or are not of such importance as to require special notice.

*By the Court.* — The motion for a rehearing is denied.

LYON, J., took no part in the decision of this cause.