WILLIAM BIRD *et al.*, Respondents, v. HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, April 10, 1888.

1. DAMAGES—FLOODING OF LANDS—NO SUCCESSIVE CAUSES OF ACTION.—In an action for damages caused by the defendant's erection of an embankment obstructing a natural water-way, and the construction of a defective and insufficient outlet, so that the plaintiffs' lands were repeatedly flooded during a series of years, the court did not err in refusing to hold that each overflow created a separate cause of action, or to compel the plaintiffs to elect upon which particular flooding, or period of flooding, they would proceed to trial.

2. —— —— —— LIMITATION.—In such cases, the cause of action is the erecting of the obstruction, with the defective and insufficient construction of an intended permanent outlet, and the right of action accrues at the date of the first substantial injury resulting therefrom. The statute of limitations then begins to run as to all damages then and subsequently occurring from the same cause, and the right of action will cease cotemporaneously with the barring of the plaintiff's right of entry, at the expiration of ten years. A right of action for damages continuously resulting from the improper construction of a permanent structure more than ten years before the institution of the suit, is barred by limitation.

3. —— —— SURFACE WATERS.—Where the injurious overflow from a natural stream is aggravated by the effects of melting snows and falling rains, it is not incumbent on either court or jury to discriminate between the damages so caused, and those resulting purely from the action of the living stream.

4. PRACTICE—CAUSE OF ACTION NOT STATED AGAINST DEFENDANT. The plaintiffs cannot recover upon a cause of action not stated in their petition, nor upon one which appears to have arisen by the agency of persons other than the defendant.

APPEAL from the Marion Circuit Court, HON. THEODORE BRACE, Judge.

*Reversed.*

STRONG & MOSMAN, for the appellant: Plaintiffs in their petition base their action on the insufficient capacity of the stone culvert. They recover upon proof showing that the channel of the stream leading to it was entirely obstructed through Evans' field; that a new culvert and new channel was provided in lieu of the old, and that this becoming choked and obstructed caused the flooding of the land. The plaintiff cannot sue upon one cause of action and recover upon another. *Clement v. Yeates*, 69 Mo. 623; *Ensworth v. Barton*, 60 Mo. 511; *Beck v. Ferrara*, 19 Mo. 30; *Hurth v. Anderson*, 87 Mo. 354; *Edens v. Railroad*, 72 Mo. 212; *Current v. Railroad*, 86 Mo. 62; *Price v. Railroad*, 72 Mo. 416; *Ely v. Railroad*, 77 Mo. 34; *Benson v. Railroad*, 78 Mo. 513; *Wayland case*, 75 Mo. 556; *Wise v. Railroad*, 85 Mo. 178. The court erred in overruling defendant's motion to compel plaintiffs to elect on which one of the several separate, distinct, and independent causes of action alleged in the one count of the petition, they would proceed to trial, and to strike out all of the others. Rev. Stat., sec. 3512; *Offield v. Railroad*, 22 Mo. App. 607; *Otis v. Bank*, 35 Mo. 128; *Brown v. Railroad*, 20 Mo. App. 429; *McCoy v. Yeager*, 34 Mo. 134; *Christal v. Craig*, 80 Mo. 367; *Dickson v. Railroad*, 71 Mo. 575; *Van Hoozier v. Railroad*, 70 Mo. 145. Defendant's motion to make the petition more specific, definite, and certain, should have been sustained. The action was barred by the statute of limitations. Defendant had the right to change the channel of said branch, provided it restored it to its former state, or to such state as not unnecessarily to have impaired its usefulness. Rev. Stat., 1879, sec. 765. "An act done under lawful authority, if done in a proper manner, can never subject a party to an action, whatever consequence follow, nor will a man be answerable for enjoying his property in a way such property is usually enjoyed, unless an injury has resulted to another from the want of proper care and skill on his part." *Radcliff v. Mayor*, 4 N. Y. 200; *Randle v. Pacific*, 65 Mo.

325 ; *Bellinger v. Railroad*, 23 N. Y. 47 ; *Boothby v. Railroad*, 51 Mo. 318 ; *Abbott v. Railroad*, 83 Mo. 271. The action was one for negligence in the performance of a public work (*Fowle v. Railroad*, 112 Mass. 337), not for a nuisance. The negligence consisted in the construction of a stone culvert, which was too small to permit the water of said stream to pass off through the embankment unobstructed. The embankment of defendant's roadbed, and especially the stone culvert, of which complaint was made, were essentially permanent structures. *Troy v. Railroad*, 3 Foster (N. H.) 83 ; *Fowle v. Railroad*, 112 Mass. 337. The damages resulting from negligence of the character stated in the petition, to-wit, the insufficient size and capacity of the stone culvert, necessarily resulted from the alleged fact that it was originally constructed too small, and was an original damage. Whenever the work, causing the damage, is of a permanent character, that will continue without change, from any cause but human labor, then the damage is an original damage, and may be at once fully compensated. *Troy v. Railroad*, 3 Foster, 83 ; *Powers v. Council Bluffs*, 45 Ia. 651 ; *Baldwin v. Gaslight Co.*, 57 Ia. 51 ; *Stogdill v. Railroad*, 53 Ia. 341 ; *Mahar v. Railroad*, 91 Ill. 312 ; *James v. City*, 83 Mo. 567 ; *Railroad v. McFarland*, 43 N. J. Law, 605. As the alleged negligence was the act of constructing the stone culvert in the summer of 1853—twenty-seven years before the date of the injuries alleged in the petition, the plaintiff's claim is barred by the statute of limitations. Rights by prescription follow the statute of limitations in respect to time. *Scherber v. Held*, 47 Wis. 340 ; *State v. Walters*, 69 Mo. 463 ; *James v. City*, 83 Mo. 570. Even if the damage here were not an original damage accruing at the time of the construction of the culvert, the action as in the case of a continuing nuisance must be " commenced before the party committing the trespass or maintaining the nuisance, has acquired a prescriptive right to do so, by lapse of such a period as bars an entry on the lands of another." *James v. City*,

83 Mo. 570, and cases cited; *Railroad v. McFarland*, 43 N. J. L. *supra*. The plaintiffs' first instruction ignored the defense of the statute of limitations pleaded in the answer, and put in issue by the reply, and which was clearly made out in the evidence. *Wyatt v. Railroad*, 62 Mo. 411; *Seymour v. Seymour*, 67 Mo. 308; *Jackson v. Bowles*, 67 Mo. 601-8; *Crews v. Lackland*, 67 Mo. 621-2. It should have embraced every legal phase of the case. *Cocker v. Cocker*, 2 Mo. App. 451; *Henry v. Bassett*, 75 Mo. 92. This error is not cured by any other instruction given. *Ins. Co. v. Hauck*, 83 Mo. 121; *Thomas v. Bobb*, 45 Mo. 384. Said first instruction was bad, in that it directed the jury to find in one gross sum, the " injury to plaintiffs' herbage," in the series of four years mentioned. *Bricker v. Railroad*, 83 Mo. 393; *Owens v. Railroad*, 58 Mo. 394; *McCoy v. Yeager*, 34 Mo. 134; *Otis v. Bank*, 35 Mo. 128; *Van Hoozer v. Railroad*, 70 Mo. 145; *Dickson v. Railroad*, 71 Mo. 576; *Crystal v. Craig*, 80 Mo. 371; *Offield v. Railroad*, 22 Mo. App. 607. This instruction was bad, in that it did not limit the damages to be assessed to such as plaintiffs had sustained at and prior to the commencement of this suit. *Brown v. Railroad*, 80 Mo. 460; Shearman & Redf. Neg., sec. 602; *Crews v. Lackland*, 67 Mo. 622. It is bad, in that it does not limit the damages to such sum as might be found to have accrued in a particular year.

H. S. PRIEST and GEORGE S. GROVER, also, for the appellant: Six separate and distinct causes of action were improperly united in one count of plaintiffs' petition. *Van Hoosier's case*, 70 Mo. 145; *Dickson's case*, 71 Mo. 575; *Offield's case*, 22 Mo. App. 607. This action is barred by the statute of limitations. *Abbott case*, 83 Mo. 288; *Troy v. Railroad*, 3 Foster [N. H.] 83; *Powers v. City*, 45 Iowa, 652; *Fowle v. Railroad*, 112 Mass. 334; *Stogdill v. Railroad*, 53 Iowa, 341; *Baldwin v. Gaslight Co.*, 57 Iowa, 51; *Railroad v. Maher*, 91 Ill. 312; *Railroad v. McAuley*, 121 Ill. 160; *James v. City*, 83 Mo. 567.

HARRISON & MAHAN, for the respondents: Appellees' cause of action is not barred by limitation. Appellant had no right under the statutes to divert the waters of a natural stream. *Abbott v. Railroad*, 83 Mo. 271; *Imler v. City*, 55 Mo. 119; *Benson v. Railroad*, 78 Mo. 504, 512. The foundation of this action is the obstruction of a natural water-course. The building of the stone culvert was not the cause of the injury. It assisted as far as it could in avoiding the injury. *Trust Co. v. Cuffy*, 26 Kan. 754; Angell on Limitation, sec. 300. The wrong committed by appellant in obstructing the natural channel of Bird's branch was in the nature of a nuisance, and a continuing nuisance; and appellees had the right to sue at any time, after any particular damage was done them; and the statute of limitations does not commence to run on such a cause of action, until the cause of action has accrued. *Trust Co. v. Cuffy*, 26 Kan. 755; *Munkers v. Railroad*, 72 Mo. 514; *Van Hoosier v. Railroad*, 70 Mo. 45; *Benson v. Railroad*, 78 Mo. 504; *Wayland v. Railroad*, 75 Mo. 552; *Railroad v. Hays*, 11 Tenn. 382. Both upon principle and authority appellant has not acquired rights by prescription. Wood on Nuisances, 736; *Railroad v. Hays*, 14 Am. & Eng. R. R. Cases, 284. The petition contains only one cause of action. *Wayland v. Railroad*, 75 Mo. 548; *Munkers v. Railroad*, 72 Mo. 514; *Van Hoosier v. Railroad*, 70 Mo. 145; *Dickson v. Railroad*, 71 Mo. 575; *Ray v. Railroad*, 25 Mo. App. 104.

ROMBAUER, P. J., delivered the opinion of the court.

As the appellant's main complaint in this case relates to the rulings of the court on the pleadings, to its rulings on questions of prescription and limitation, and to the fact that the plaintiffs were permitted to recover on another cause of action than the one stated

in their petition, it becomes essential to set out the pleadings in detail.

The plaintiffs, in their petition, state the following facts :  They are, and were at the date of the grievances complained of, owners in possession of certain lands on the banks of a natural water-course and stream known as Bird's branch, which, after traversing plaintiffs' land and crossing defendant's right of way, emptied into a natural stream known as Bear creek.

Many years ago the defendant built its railroad embankment, closing and filling the natural bed of Bird's branch, and dug a ditch from the point where the branch crossed defendant's right of way along said right of way to a stone culvert designed to pass the waters of the branch through its railroad bank to the other side thereof.  The petition then proceeds as follows :

"Now the plaintiffs state that the said defendant, its agents, servants, and employes, did not construct, erect, and maintain the said stone culvert in a scientific, skillful, careful, and prudent manner, as it was their duty to do, but, on the contrary, did construct the same in an unskillful, careless, and negligent manner, and have maintained, and have continued to use, and still use, the same constructed, notwithstanding its condition, owing to its construction in such unskillful, careless, and negligent manner, from said date to the time of bringing this suit; that the said stone culvert was. not, is not, and never was, of size and capacity sufficient to permit the waters of said stream (and the waters of the rain and melting snow accumulating therein) to have sufficient outlet, and to pass through the same, but, on the contrary, by means of the defect therein as aforesaid, to-wit, the want of capacity thereof, the said water was obstructed at said culvert, by means of the want of capacity thereof, and prevented from passing off and away from said lands, and were caused to dam up at said culvert, and to flow back into said ditch or aqueduct into the channel of said stream, and to fill the

same, and overflow the banks thereof, and thence to run into and overflow the lands of plaintiffs as aforesaid, and to destroy the herbage thereon, and to greatly depreciate the productiveness of the soil thereof.

"That in the years 1880, 1881, 1882, 1883, and 1884, and in each year thereof, the said waters of the said stream [and the waters of the rain and melting snow accumulated thereon] were obstructed in their passage at said culvert by reason of the insufficiency thereof, and were prevented, by reason of the said want of capacity of said culvert to carry off said waters, from running and passing off, and were accumulated and dammed up at said culvert, and did flow back thence into said ditch or aqueduct, and into the channel of said stream, and did fill said channel and overflow the banks thereof onto the said lands of plaintiffs, and did overflow and spread over said lands to the extent of fifteen acres, and more, and remain standing thereon for a long space of time, and did thereby destroy the herbage on said lands, and greatly depreciate the productiveness and the value of the soil thereof, and did thereby greatly injure plaintiffs, and plaintiffs say that said injury in the manner aforesaid was occasioned by the wrongful, unskillful, careless, and negligent conduct and acts of defendant, its servants and agents, in and about the changing of the course of said stream by the means aforesaid, and in and about the construction and building of the said stone culvert by the means aforesaid, and that plaintiffs have been damaged in the sum of two thousand dollars, for which judgment is prayed."

The defendant thereupon filed the following motion:

"Defendant moves the court for a rule on plaintiffs to elect upon which of the injuries pleaded in their petition as having occurred severally in the years 1880, 1881, 1882, 1883, and 1884, they will proceed to trial, and prays the court further, after such election, to strike out of said petition all the other matters stating other injuries than that so elected to be tried, because: (1) Said petition charges in one and the same count

thereof, five distinct injuries, each of which, if well pleaded, constitutes a several cause of action ; (2) said several causes of action are blended in one count, and not separately stated, as required by law."

This motion was by the court overruled, the defendant excepting. The defendant also moved to make the petition more definite and certain, and to strike out from it all that relates to surface water, which motions were likewise overruled, the defendant excepting. The defendant then filed its answer admitting its corporate existence and the construction of the embankment. It denies that it ever obstructed the natural water-course of Bird's branch. It averred that it constructed ample culverts and water-ways to carry the water off the branch through its embankment, and makes the following allegation in regard to the stone culvert :

"Avers that defendant was such corporation, and as such owned said right of way, and constructed thereon said embankment, of the dimensions, and in the manner as respects the surface flowage over the adjacent lands, and as to flowage and streams across said lands, as it now is, and as they have always been since, and constructed through and across said embankment the stone culvert mentioned in the petition of the dimensions and capacity, and form and location as respects the flowage of both the surface water and water-courses, in all respects precisely as the same now is, and since its construction has always been, more than five years, more than ten years, more than twenty years, before the date of beginning of this suit, and this defendant did, more than twenty years before the beginning of this suit, construct its railroad upon said embankment, and commence operating the same, and has so continuously used and operated the same thereon ever since."

The answer then pleads the statute of limitations of five years, the statute of limitations of ten years, and avers that the injury, if any, caused to plaintiffs' lands were owing to the negligence of plaintiffs and other parties for whose acts the defendant is not responsible.

The answer was traversed by reply. . Upon a trial the plaintiffs had a verdict and judgment for $390.65.

The first question presented for our consideration is, whether the defendant's complaint that the petition contains several causes of action mingled in the same count is well founded. If so the judgment must be reversed for that ground alone, because the defendant properly saved its exceptions in every way in which it could properly raise the point, by its motion to compel plaintiffs to elect, by objection to evidence, and by motion for new trial. *Mooney v. Kennett*, 19 Mo. 551 ; *Otis v. Bank*, 35 Mo. 131 ; *Christal v. Craig*, 80 Mo. 370, 371 ; *Offield v. Railroad*, 22 Mo. App. 607.

The rule in this class of cases is concisely stated by Judge Hough, in *Van Hoozer v. Railroad*, 70 Mo. 148, as follows : "In cases of nuisances the rule is well settled that the plaintiff cannot recover for injuries not sustained when his action is commenced. It is equally well settled that when the injury inflicted is of a permanent character and goes to the entire value of the estate, the whole injury is suffered at once, and a recovery should be had therefor in a single suit, and no subsequent action can be maintained for the continuance of such injury. But where the wrong does not involve the entire destruction of the estate or its beneficial use, but may be apportioned from time to time, separate actions must be brought to recover the damages thus sustained."

The Kansas City Court of Appeals in *Offield v. Railroad*, *supra*, in applying the rule thus stated to a petition seeking a recovery in one count for damages caused by the annual overflow of plaintiffs' premises in five successive years by the diversion of the channel of a water-course by defendant, made the following statement of the law : "Where crops are injured by an annual overflow of water such injury does not go to the entire value of the estate, but being of yearly recurrence, is susceptible of periodical apportionment, and may, therefore, be redressed by successive actions. Each annual

overflow was a separate cause of action and as such should have been separately stated in plaintiff's petition." The judgment in that case was reversed because the trial court failed to compel plaintiff to elect one of the five years overflows on which to proceed, and to dismiss as to the residue, or else state each annual overflow as a separate cause of action.

We confess that we cannot fully agree with the reasoning of the learned judge who decided that case. If the structure causing the overflow was a continuing nuisance, the plaintiff might have brought action upon it from day to day, or else he might have waited until he suffered a series of injuries and then sought redress for them in one action. The injuries were essential to enable the plaintiff to recover substantial damages, and affected only the *quantum* of his damages, but his cause of action was the erection of the nuisance. He might have sued for each temporary injury resulting to him therefrom, but was not bound to bring an action for each temporary injury as soon as the same occurred. There can be no warrant for fixing arbitrarily the plaintiff's causes of action as severable into yearly periods. Many overflows may occur from the same cause in one year, and none in another. Neither the pleadings in this case, nor even the evidence, show that there was one overflow in each year, and that such overflow gave to the plaintiffs a distinct cause of action. We must, therefore, reach the conclusion that the court did not err in overruling the plaintiffs' motion to elect.

Nor did the court err in its refusal to strike from plaintiffs' petition such parts thereof as relate to melting snows and falling rains. Since the decision in *Abbott v. Railroad*, 83 Mo. 271, the rule in this state is well settled as to surface water in such cases. An owner may so improve his lands as to either increase or diminish the quantity of water which has previously flowed on adjoining lands, and is not responsible to such adjoining owners for the damages caused by the improvements in that respect. But this rule has never

been applied to the obstruction of water-courses fed by living streams, as Bird's branch is admitted to be, nor can we well see how either the court or jury could intelligently determine what portion of the water of such streams was the result of rain and melting snows along their course, and what portion the result of living and perpetual springs.

This brings us to the defendant's main complaint, which is two-fold. First, that the petition states one cause of action and the court upheld a recovery under evidence showing another and wholly different cause of action, and next, that the cause of action which plaintiffs' petition states was barred by the statute of limitations under the uncontroverted evidence.

The following map, which is a part of the record, and admitted by plaintiffs to be a correct representation of the natural course of the stream through plaintiffs' lands, and of the obstruction of the flowage complained of, will best illustrate our views hereinafter expressed:.

The present action was begun on March 2, 1885. The defendant constructed its railroad bank in the year 1853, and more than thirty years prior to the institution of this suit, between the points marked AA on the map, and at that time put in the stone culvert mentioned in the petition, and shown on the map at point C. Subsequently, the exact date of the erection of the structure not appearing, the Missouri Pacific Railroad Company built its railroad bank on a line parallel with that of defendant's between the points marked BB. The obstruction of the natural water-course of Bird's branch by defendant occurred in the year 1854. The water was then conducted in a straight channel to the barrow pits near defendant's bank through said culvert towards Bear creek. Plaintiffs claim that the culvert, after such obstruction, never was sufficient to pass all the waters of Bird's branch, in times of heavy rains, through the defendant's bank. One of the plaintiffs testifies in so many words, "It was in 1854, or 1855, or 1856, that the damage first occurred, and it was an annoyance to us ever since then."

The jury, in answer to special interrogatories submitted to them, found as follows:

"Q. 1. Did the waters of Bird's Branch, by reason of the defendant's embankment in the old channel thereof, and because of the insufficiency of the stone culvert in size and capacity, escape from and out of the natural channel in the year 1854 ? A. Yes."

"Q. 2. In what year after the year 1853 did the waters of Bird's branch *first* escape from its natural channel by reason of the alleged diversion of its ancient course, and on account of the alleged insufficient size and capacity of the stone culvert ? A. Overflow begun about the years 1873 or 1874."

"Q. 3. Did the waters of Bird's branch escape each year, beginning in 1854, and thenceforward to the time of building the pile bridge or culvert by defendant, some eight or nine years ago ? A. Waters began

to escape as soon and when the natural channel or bed was filled with the deposits, and thereafter."

"Q. 4. If you answer question three yes, state whether such waters were caused to escape by the filling up of said ancient channel by defendant's embankment, and because the stone culvert was insufficient in size and capacity to receive and carry away such waters?" A. Yes, caused by the defendant's embankments which was the cause of the deposits to fill the channel of Bird's branch, and the want of capacity of stone culvert to receive and carry away such waters."

"Q. 5. Did the drift and deposit of sand and other solid matter, in the ditch left for the outlet of said Bird's branch along the north side of its roadbed to the stone culvert, begin to accumulate therein and in the portion of the ancient channel of said branch in 1854, and did such deposit increase yearly thereafter and diminish annually the capacity thereof to receive and carry such waters? A. Yes."

"Q. 6. If you answer question five yes, state how many years said deposit continued to be formed in such ditch and old channel? A. Eighteen or twenty years."

"Q. 7. State the year when such waters of Bird's branch, if any, began to escape therefrom by reason of the said obstruction and deposit, and to flow upon plaintiffs' land, described in the petition? A. About the years 1873 or 1874."

"Q. 8. State the years when such waters so obstructed, as in other questions stated, first overflowed lands of plaintiffs? A. About the years 1873 or 1874."

The evidence further shows without contradiction that the natural channel of Bird's branch, after the construction of said stone culvert, began to fill annually more and more, by earth deposits, brush, and other obstructions, carried by its waters from the adjoining hills. This filling process finally obstructed the natural channel to an extent that it became necessary to find another outlet for the waters. The defendant thereupon, about nine years prior to the institution of this suit,

upon the request of the land-owners interested, includ-
ing plaintiffs, built an open bridge through its bank at
the point shown by letter D on the foregoing map, and
some of the parties interested tried to connect the old
channel of Bird's branch with the new open bridge by
the construction of a new channel. This additional
structure failed to give the required relief, but it is far
from clear under the evidence whether this was owing
to the insufficiency of the open bridge structure, or
owing to the fact that the parties interested failed to
keep the newly-constructed channel sufficiently deep
and free from obstructions, to pass the waters of the
branch to the bridge. All the damages herein sued for
were caused to the plaintiffs after the construction of
the new open bridge and after the digging of the new
channel.

The defendant requested the court to instruct the
jury that the plaintiffs could not recover, which instruc-
tion the court refused. Whatever view we take of the
evidence the defendant was clearly entitled to this
instruction. If the stone culvert was faulty in its
original construction and insufficient to carry off the
waters of Bird's branch, as the plaintiffs testified and
the jury found, then plaintiffs' cause of action originated
in 1854, when, according to the evidence, they first sus-
tained substantial injuries due to such defective
construction. The stone culvert was essentially a
permanent structure, which could not be assumed to be
liable to change. Damage was caused by it as early as
1854, and the continuance of such damage was apparent
and could be fully compensated then. Such is the view
taken by the courts both in this state and elsewhere.
*Power v. Council Bluffs*, 45 Ia. 652; *Stodghill v. Rail-
road*, 53 Ia. 341; *Railroad v. Maher*, 91 Ill. 312;
*Railroad v. McFarlan*, 43 N. J. Law, 605, 613; *Fowle
v. Railroad*, 112 Mass. 337; *Troy v. Railroad*, 23 N. H.
83; *James v. City of Kansas*, 83 Mo. 567. The contin-
uance of the nuisance, if any, may have given to the plain-
tiffs a cause of action for all damages caused within the

statutory period of limitations, but could not give them a cause of action after their right of entry was barred. Angell on Limitations, sec. 300; *McGowan v. Railroad,* 23 Mo. App. 203. In the two Iowa cases first above cited the law on this subject is reviewed very fully, in fact we are not aware that the position herein taken has ever been seriously questioned.

It is apparent, therefore, that so far as plaintiffs' cause of action springs from the insufficiency of the culvert erected in 1853, such cause of action is barred by the statute of limitations of ten years, which bars the plaintiffs' right of entry, since rights by prescription follow the statutes of limitations in respect to time. *Scherber v. Held,* 47 Wis. 340; *State v. Walters,* 69 Mo. 463; *James v. City of Kansas, supra.* The only cause of action stated in the petition is the insufficiency of the stone culvert, and plaintiffs on the evidence under the law could not recover for that cause in the present action. Nor could they recover for the diversion of the channel nine years ago, and the conduct of the water to the open bridge then constructed, owing to the following propositions. No such cause of action is stated in their petition. *Ensworth v. Barton,* 60 Mo. 511; *Clements v. Yeates,* 69 Mo. 623; *Waldhier v. Railroad,* 71 Mo. 514; *Price v. Railroad,* 72 Mo. 416; *Benson v. Railroad,* 78 Mo. 504, 513. If such cause of action were stated in their petition the proof would fail to support it since that diversion under the uncontroverted evidence was the act of others. *Wayland v. Railroad,* 75 Mo. 549.

As plaintiffs are not entitled to recover in any view of the facts, it results that the judgment must be reversed. Judge Thompson concurring, the judgment is reversed.