WILLIAM BUNTEN, Respondent, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 30, 1892.

1. **Nuisance:** SEPARATE CAUSES OF ACTION: PLEADING. Where the erection is on one's own land, and is not of itself a nuisance, the authorities are all agreed that the cause of action is not the original erection, but is the damage arising from the new, fresh or continued erection at the time of damage, and so, where an action is brought for damage to crops for three successive years because of the negligent construction of a railroad bridge, the destruction of each crop constitutes a separate cause of action, and if united in the same petition should be separately stated.

2. ————: LIMITATION: ACCRUING OF DAMAGES: WHO LIABLE. Where the nuisance consists of a work or erection, which is permanent and necessarily injurious, the whole injury rises generally upon its completion, the entire damage, present and prospective, accrues at once, and is the subject of a single action which must be brought within the period of limitations; but if such erection is on one's own land, and does not of itself work the injury when erected, then the limitation will not begin to run until the first injury happens, and he who owns or maintains it at that time will be liable.

3. ————: ————: ————. In 1872 defendant's predecessor constructed its roadbed diverting the channel of a watercourse and turning it across and under its embankment through a bridge. Thereafter the channel began to fill up, and from time to time to overflow plaintiff's land until in June, 1883, it became a fixed and permanent embankment and necessarily injurious. In December, 1887, suit was brought for the destruction of the crops of 1883, 1884, 1885, and in September, 1889, the petition was amended by averring permanent injury to the land. *Held:*—

    (1) The action for the destruction of the crops was not barred.

    (2) The action for permanent injury alleged by the amendment in September, 1889, was barred.

    (3) In June, 1883, when the bridge became a permanent embankment, plaintiff's right of action for all damages, present and prospective, became complete, and as he elected to sue for the three crops his recovery therefor would bar an action for the injury to the inheritance.

4. ————: PRESCRIPTION: ACQUIESCENCE: SUITS. Prescription may transfer what was originally a nuisance into a right; but the use

must be adverse, continuous and uninterrupted and with the acquiescence of the owner for ten years, and bringing suits for damages for such use shows sufficiently the want of acquiescence.

**5.** But Continuous Use does not necessarily mean constant use.

**6.** ———: PRESENT AND FORMER OWNER. If at the time defendant became owner of the property the removal of obstructions on its right of way would not have relieved such filling of the channel off its right of way, it would not be liable for any injury resulting from such obstructed channel, but its predecessor alone would be liable tnerefor.

*Appeal from the Buchanan Circuit Court.*—HON. OLIVER M. SPENCER, Judge.

REVERSED AND REMANDED.

THIS action was originally brought to recover damages for the destruction of plaintiff's growing crops, occurring successively in the month of June of the years 1883, 1884 and 1885. The action was begun on December 16, 1887, by filing a petition in one count alleging and asking damages in one sum. The petition was amended by adding an allegation of permanent injury to the land. Plaintiff recovered, and defendant has brought the case here.

In the summer of 1871, the Chicago & Southwestern Railway Company graded its railroad, building its embankment in such a manner as to turn the stream down the north side of its roadbed sixty or seventy feet, and then turned it at right angles across the roadbed through a pile bridge, consisting of four bents of piling sixteen feet apart, making three openings at least fourteen feet wide, and extending about four feet above the natural banks of the stream, for the passage of the water. As variously estimated by the witnesses, the channel at this point had been from fifteen to thirty feet wide on top, sloping down toward the center to a depth of two to three feet. The quantity of water

carried in ordinary stages was small, being from four to six inches deep.

The road was completed in 1872 and leased to the Chicago, Rock Island & Pacific railroad, differing from the name of this defendant only in being called "railroad" instead of "railway." By mesne conveyances and by a reorganization and consolidation of several corporations, the defendant corporation was formed, and became the owner of this road on June 2, 1880, the road having been operated by its different owners all the time from its completion.

The petition sets forth the construction of the road by the Chicago & Southwestern Railway Company, and that it "negligently and carelessly constructed in and across the channel of said stream at said point, as and for its roadbed, an embankment of dirt, whereby the waters of said stream were turned and diverted from their natural course and caused to flow in a westerly direction for a distance of about fifty yards, at and from which last-mentioned point the waters of said stream were caused by said Chicago & Southwestern Railway Company to turn and flow in a southerly direction back into the channel of said stream.

"That, at said point where said stream was turned in a southerly direction as aforesaid, the Chicago & Southwestern Railway Company carelessly and negligently constructed a bridge and trestle work across said stream, in the month of June in the year 1872, which said bridge and trestle work was carelessly and negligently so constructed as to be too low and too narrow and insufficient to permit the waters of said stream to flow thereunder, and the piles of said trestle were then and there negligently and carelessly placed by said company close together, leaving the space between them insufficient to permit the waters of said stream to flow under the said trestle."

It then states in substance, that the defendant took possession of the road with the full knowledge of all the facts, and negligently caused and permitted driftwood, dirt, *debris*, brush, logs, mud and stones to accumulate in the channel under the bridge until June, 1883, when the space was filled to within two feet of the top of the trestle, at which time the defendant negligently raised its track at that point about two feet, and completed its embankment at that point by filling up the old trestle to the ties and rails with earth and stone so as to make a complete embankment, and the water was prevented from flowing under said trestle. That since said time the defendant has negligently permitted said embankment to remain, and has negligently kept and maintained it.

The petition then charges that the plaintiff was the owner of the northeast quarter of section 10 in township 55 of range 37, and that by reason of the matters stated the waters of the creek were caused to flow onto said land in the years 1883, 1884 and 1885, destroying certain crops thereon in each of said years, and asks damage therefor.

On the sixteenth day of September, 1889, plaintiff filed an amended petition, in which the following paragraph was added: "That by said overflows plaintiff's land was greatly injured and damaged and rendered unfit for cultivation, and made useless for any purpose, and its value decreased in the sum of $7,000, and its rental value was decreased and destroyed," and the said sum of $7,000 was added to the amount of damages prayed.

The answer pleaded the statutes of limitation of five and ten years, and the pendency of another suit upon the same cause of action. The original petition in the suit so pleaded was filed on the sixteenth day of

May, 1883, for damage to crops by overflow of the land involved in this suit for the years 1879 to 1883, inclusive. The wrong charged from which the petition alleged that the overflow proceeded was stated as follows: "In so constructing said railroad across said stream, the Chicago & Southwestern Railway Company constructed in and across the channel of said stream at said point an embankment of earth, whereby the waters of said stream were turned and twisted from their said course so as to flow upon and over the said lands of plaintiff." Nothing was said about any bridge, *debris* or other obstruction. An amended petition was filed in that suit on the eighth day of April, 1889, containing the same allegations as to the construction and maintenance of the railroad bridge in question as are made in this amended petition, and charging the total destruction of crops of corn and wheat on said lands for each of the years above mentioned by overflow caused thereby. This suit was tried on the fifth day of March, 1890, and, after a demurrer to the plaintiff's evidence on the trial had been sustained, he suffered a nonsuit. After the court had overruled a motion to set aside the nonsuit, and on the thirtieth day of August, 1890, plaintiff brought a new suit upon the same cause of action (except for the destruction of crop of 1883), which is still pending.

*Brown & Craig*, for appellant.

(1) The right of defendant to maintain the creek in its new channel had then been fixed by prescription, and plaintiff's action was barred. *Bunten v. Railroad*, 41 Fed. Rep. 744; *James v. Kansas City*, 83 Mo. 567; *McGowan v. Railroad*, 23 Mo. App. 203; *Bird v. Railroad*, 30 Mo. App. 365; *State v. Wells*, 70 Mo. 635. (2) This instruction should also have been given, because

under the facts admitted by plaintiff this action was barred by the statute of limitation of five years.  *James v. Kansas City*, 83 Mo. 567; *Bird v. Railroad*, 30 Mo. App. 365; *Powers v. Council Bluffs*, 45 Iowa, 652; *Troy v. Railroad*, 23 N. H. 83; *Bunten v. Railroad*, 41 Fed. Rep. 744; *Railroad v. McAuley*, 121 Ill. 160; *Railroad v. Maher*, 91 Ill. 312.  (3)  The defendant had no right to commit a trespass on others for the purpose of restoring the stream.  *Wayland v. Railroad*, 75 Mo. 549; *Railroad v. Mihlman*, 17 Kan. 224.  (4)  The court erred in giving the first instruction asked by plaintiff.  Under the direct pressure of the authority of *Wayland v. Railroad*, *supra*, it was compelled to instruct that the defendant, who became the owner of the road on the second day of June, 1880, was not liable for any act done by its predecessors in the ownership of the railroad, unless it had itself been guilty of some negligence after said day; but rendered those instructions harmless to plaintiff by giving his first instruction which asserted a proposition directly in conflict with that given for defendant.  (5)  "The intervention of an independent act of a third person between the wrong complained of and the injury sustained, which was the immediate cause of the injury, is properly made a test of that remoteness of damages which forbids a recovery."  *Cuff v. Railroad*, 35 N. J. L. 32; *Washington v. Railroad*, 17 W. Va. 190.

*D. D. Burnes* and *Jas. W. Boyd*, for respondent.

(1)  The character of plaintiff's cause of action and of the nuisance created by the appellant and its predecessors, and the rights of parties whose crops had been destroyed by overflows of this creek, caused by appellant, by diverting said stream of water, have been determined by the supreme court in the case of *Dickson*

*v. Railroad*, 71 Mo. 575, and by this court in *Offield v. Railroad*, 22 Mo. App. 607, and in *Culver v. Railroad*, 38 Mo. App. 130; *Brinks v. Railroad*, 17 Mo. App. 177. (2) The instructions taken together presented the case very favorably to the appellant. *Bank v. Hatch*, 98 Mo. 376; *Muehlhausen v. Railroad*, 91 Mo. 332; *Whalen v. Railroad*, 60 Mo. 325; *Karle v. Railroad*, 55 Mo. 476; *McKeon v. Railroad*, 43 Mo. 405; *Shortel v. City of St. Joseph*, 104 Mo. 214; *Altgear v. Walsh*, 24 Mo. App. 134. (3) The second point made by appellant is that instruction, numbered 1, given on the part of the respondent is erroneous. This position of the appellant is not tenable. *Shortel v. City*, 104 Mo. 114; *McGonigle v. Daugherty*, 71 Mo. 259; *Davis v. Brown*, 67 Mo. 313; *Crutchfield v. Railroad*, 64 Mo. 255; *Banks v. Armstrong*, 62 Mo. 59; *Altgear v. Walsh*, 24 Mo. App. 134; *Tetherow v. Railroad*, 98 Mo. 74. But instruction, numbered 7, given on appellant's behalf is also to be considered in connection with said instruction, numbered 1, and certainly appellant could ask for nothing more favorable than these instructions all taken together. All instructions given taken together constitute the charge to the jury. *Harrington v. Sedalia*, 98 Mo. 583; *Bank v. Hatch*, 98 Mo. 376; *Owen v. Railroad*, 95 Mo. 170; *Reilly v. Railroad*, 94 Mo. 600; *Wetzell v. Wagoner*, 41 Mo. App. 509; *Wallich v. Morgan*, 39 Mo. App. 469; *Railroad v. Vivian*, 33 Mo. App. 583; *Brink v. Railroad*, 17 Mo. App. 177. (4) What has already been said in reply to the second and third points made by appellant would show that the fourth point assumed by the plaintiff is not well taken. *Culver v. Railroad*, 38 Mo. App. 130, and other cases cited. (5) As to limitations and measure of damages, see, also, *Wells v. Railroad*, 23 N. E. Rep. 724; *Railroad v. Helsley*, 62 Tex. 593

ELLISON, J.—I.   It will be observed from the statement, that the petition in this cause is based on the successive destruction of plaintiff's growing crops in the month of June for the years 1883, 1884 and 1885, and for permanent injury to the land, and that there is but one count with the damages laid in a gross sum.   Defendant contended below that the destruction of the crop in each year made a separate cause of action which, if united in the same petition, should be separately stated in separate counts.   This point was made in the proper manner, but was overruled.   The ruling was erroneous as was decided in *Offield v. Railroad*, 22 Mo. App. 607. Each destruction of a crop resulted in damages which must be brought separately (*Van Hoozier v. Railroad*, 70 Mo. 145), or, if united in one action, it must be counted on separately.   We thought this position to be quite clear until we found it questioned in *Bird v. Railroad*, 30 Mo. App. 374.   That criticism perhaps accounts for the ruling of the trial court in this case.   But it is not well grounded.   If it be conceded that the cause of action is the erection of the nuisance, in a case where the erection is on one's own property, and not of itself an invasion of another's right, yet the nuisance is considered as being newly erected at the time the injury happens.   The action in such a case is never bottomed on the old or original erection,—for such original erection may be barred by limitation, but on its being maintained and continued at the time of the injury which, in theory of law, is a new erection or fresh nuisance.   Gould on Waters, sec. 412; Wood on Nuisances, sec. 865; *K. P. Ry. Co. v. Mihlman*, 17 Kan. 228.

So each separately defined injury being the subject of specific apportionment is a separate action, whether such injury happen once a year or more than once. Each separate injury is subject to its own period of limi-

tation without being aided by subsequent injuries—they are not one connected thing. I can readily see, where if one should cause a continuous flood to be flowed upon another's land for a period of (say) thirty days, limitation would not begin to run for the whole damage until the day the injury ceased. Each day's injury in such case is but part of a single injury; besides, it is not subject to apportionment; it is the result of the one act. But not so with separate and distinct injuries which arise from "new" and "fresh" causes. Where the erection is on one's own land and is not, of itself, a nuisance, the authorities are all agreed that the cause of action is not the original erection, but is the damage arising from the "new," "fresh" or "continued" erection at the time of damage.

II. Defendant asked and was refused instructions on two theories of limitation; one that the cause of action stated in the amended petition accrued more than five years before bringing the suit; the other, the defendant had a right by prescription to maintain the embankment, it and its predecessors having maintained such embankment for more than ten years before bringing the suit. We will state our conclusion as to each of these pleas.

It seems definitely settled, upon authority, that where the nuisance consists of a work or erection, which is permanent in its character, and which is necessarily injurious, the whole injury arises generally upon the completion of the work, the entire damage, present and prospective, accrues at once, and is the subject of a single action which must be brought within the period of limitation from the erection of the nuisance. Gould on Waters, sec. 416; *Troy v. Railroad*, 23 N. H. 83; *Powers v. City of Council Bluffs*, 45 Iowa, 652. And in such case the party erecting the nuisance (not his grantees or successors) is alone liable. *Bisor v. City of*

*Ottumwa,* 70 Iowa, 145; *C. & A. Ry. Co. v. Maher,* 91 Ill. 312. This doctrine should be understood with this qualification: If the nuisance is on one's own land and does not, of itself, work the injury when erected, then the limitation will not begin to run until the first injury happens, and he who owns or maintains it at that time will be liable. *Polly v. McCall,* 37 Ala. 20; *Troy v. Railroad, supra; Culver v. Railroad,* 38 Mo. App. 138; *Van Orsdal v. Railroad,* 56 Iowa, 470; *Sullens v. Railroad,* 74 Iowa, 659. For in such case the damage is resultant and contingent. This qualification is especially applicable to such railroad embankments as may or may not cause the overflow of adjacent lands.

The nuisance here, as originally erected, was not necessarily injurious or permanent in character, nor was it originally, of itself, of such nature that it might not have been kept in such condition as not to have been the cause of damage. But defendant permitted it to take a permanent form by allowing the space or water way under the bridge to fill up so as to raise the bed of the stream above as well as under the bridge, until, finally, in June, 1883, defendant filled in the remaining space under the bridge and thereby made of the bridge a solid embankment. Up to the time of its becoming permanent, by filling up the space, it could not be said that it would be permitted to become so, and plaintiff could not be allowed to recover more than the damage done him prior to the time of bringing his suit. Any time after the channel of the creek began to fill up as a result of the lodging of *debris* under the bridge, and up to June, 1883, when it was filled in, there was no evidence of its permanency, nor nothing to show that the railway companies would not clear it away and keep it cleared, or, if the bridge was too narrow to pass the water, to widen it. The wrong was upon defendant's own land and originally consisted in allowing the

bridge to become choked; and continuous actions might have been brought (on damage happening) for the continuous wrong, for it was yet a wrong which defendant might be expected to cease doing. But when it became fixed and permanent, in June, 1883, as a railroad embankment, it became necessarily injurious. Experience of past years had shown this, and it worked injury in that very month. At that time, it could as well be seen that future damages would follow from the flowing of high waters, as that rain would fall. Defendant then was at that time liable for the present and prospective damage, and such could have been recovered by plaintiff in one action. The statute of limitations, therefore, begun to run at that time on plaintiff's whole damage, present and prospective. The whole damage could then have been ascertained and allowed, and will be considered as embraced in the damage allowed in any action based on damages accruing after that time. Applying this principle, we find that this action was begun in less than five years from June, 1883, viz., in December, 1887, and was for the destruction of crops in June of 1883, 1884 and 1885, and unless the cause of action was changed by the amended petition, filed in September, 1889, neither of those years is barred by the five years' statute. If the cause of action in this respect was changed by such amendment, then, for the purpose of limitation, the cause of action will be considered as originally sued on at the later date (*Bunten v. Railroad*, 41 Fed. Rep. 744), and the years 1883 and 1884 would be barred. The only change made is by the addition of a paragraph at the foot of the petition, alleging injury to the land itself and claiming additional damage therefor. This may be said to be an allegation of an *additional* cause of action; but it was not a change or abandonment of the original cause of action, that remaining as it was stated in the original petition. The

cause of action as originally alleged was, therefore, not barred by the five years' period, and defendant's instructions 2 and 3 were properly refused.

But the latter considerations lose some practical importance in the condition of plaintiff's case. His cause of action arising since June, 1883, as shown above, goes to the destruction of the beneficial use of the lands affected, for then the nuisance became permanent. His redress is for damage to his land. But he has been permitted to recover for the loss of successive crops in addition to the loss of the land upon which he would have grown them, if he had not lost the use of the land. This he should not be permitted to do. Since the permanent establishment of the embankment in June, 1883, he has had but one cause of action, and that, as before stated, is for the loss of the beneficial use of his land. He sued specifically for such loss by setting it up in an amended petition filed in September, 1889, but at that time it was barred by the five years' statute of limitations, and should not have been allowed.

It does not, however, follow from this consideration that plaintiff should altogether fail in his action. We have already seen that the action, as originally alleged, was not barred, and though it is for a less damage than he might have asserted; though it is not as comprehensive as were his rights at the time he instituted it, that fact will not debar him. Its only effect will be to conclude him from any further action, as he will not be permitted to litigate now what he should have asserted them; this action being *res adjudicata* to any future action based on the wrong done by this defendant with reference to this stream. *Stodghill v. Railroad*, 53 Iowa, 341.

III. Nor can the defendant make out a right to maintain the nuisance by prescription. Time may transform that which was originally a nuisance into a

right.   This right will become fixed by prescription at.
the period when the right of entry is barred (*McGowan
v. Railroad*, 23 Mo. App. 203; *James v. City of*
*Kansas*, 83 Mo. 567), which, in this state, is ten years.
But the use must be adverse, continuous and uninter-
rupted, and with the *acquiescence of the owner*.   *Cobb v.*
*Smith*, 38 Wis. 21; *House v. Montgomery*, 19 Mo. App..
170, 181.   It should not, however, be understood in cases.
of this nature that continuous use necessarily means.
constant use.   When the injury done to the servient.
estate is periodical, with no abandonment or discontin-
uance of the claim of right, it will suffice.   *Bodfish v.*
*Bodfish*, 105 Mass. 317; Angell on Water Courses, sec.
210.   Now in this case the evidence showed that by
filling up under the bridge which was built about sixty
feet below the point where the railroad embankment.
crossed the creek, for the purpose of letting it through
into the old channel, the water was forced on down
north of the railroad track and resulted in a new
channel; that in consequence of this change of channel,
caused by the filling up under the bridge, plaintiff's
land was overflowed, and he suffered damage as early as
June, 1877.   This was more than ten years prior to the
institution of this suit.   But while this shows the neces-
sary length of time for a right, by prescription, to flow
plaintiff's land, there is another fact in the case which
destroys other elements necessary to vest the right by
prescription.   That fact is a lack of acquiescence on
the part of the plaintiff.   As shown above, the adverse
right must not only be enjoyed and asserted continu-
ously for ten years, but it must be acquiesced in by the
owner.   *Cobb v. Smith, supra; House v. Montgomery,*
*supra*.   The evidence in this case shows that plaintiff
was affirmatively denying defendant's right and assert-
ing his own, by bringing suits for damages caused by
the defendant's acts.   These suits were for damages

for flowing his land caused by obstructing this stream; and whether the suit was based on what would technically, as a matter of pleading, be denominated the same cause of action asserted in this, will make no difference. It was a contest against the right defendant now claims to be established by prescription. The case of *Bird v. Railroad*, 30 Mo. App. 365, does not aid defendant, for the first substantial damage in that case resulted in 1854 from a defective construction of a stone culvert erected in that year, and the plaintiff acquiesced thereafter for more than thirty years. Neither does the case of *James v. Kansas City*, 83 Mo. 567, apply to the facts here.

IV. If the channel of the creek, off of the right of way, was filled up when defendant became owner of the road, although caused by obstructions on its right of way at the bridge, yet if the removal of such obstructions by defendant would not have relieved such filling of the channel off of the right of way, defendant would not be liable for any injury resulting from such obstructed channel. For, in such case, the injury would be attributable solely to the act of defendant's predecessors, unaided by any act of omission or commission by defendant. Instructions 10 and 11 refused for defendant should, therefore, be given; and instruction, numbered 1, given for plaintiff, ought not to be so worded, as it seems to be near the close, as to make defendant liable for the act of its predecessors.

The judgment will be reversed, and the cause remanded. All concur.