ELLEN GORMAN, Appellant, v. CHICAGO, BUR-
LINGTON AND QUINCY RAILROAD COM-
PANY et al., Respondents.

St. Louis Court of Appeals, July 2, 1912.

1. **STATUTE OF LIMITATIONS: Permanent Nuisance: When
Statute Commences to Run.** Where a nuisance is permanent
in character and causes damage which will continue so long
as it remains, the entire damage, present and prospective, ac-
crues as soon as the condition causing it comes into existence
and is discoverable, and hence it is the subject of a single action,
which is barred when not brought within the period of limita-
tion after its accrual.

2. ————: ————: ————: **Railroads: Embankments: Waters
and Watercourses.** The building of solid railway embankments,
permanent in character, which immediately caused surface-
water to back up and overflow adjoining land and which would
continue to have that effect so long as they remained, caused
a permanent nuisance, an action for damages for the main-
tenance of which, not commenced for sixteen years, was barred
by the Statute of Limitations; and whether the five or the ten-
year statute was applicable is not determined.

3. **NUISANCES: Railroads: Maintaining Embankments: Waters
and Watercourses.** In an action for damages against a rail-
road company, the petition alleged that the waters gathered
by defendant's embankments "stood upon defendant's property
and formed a pond thereon, into which defendant drains or
permits to drain or flow other waters, slops and filth from a
roundhouse, a boarding-house and privies in the vicinity; that
said pond overflowed defendant's said property and onto plain-
tiff's said property and at times covers and stands upon the
whole thereof, carrying and depositing said filth thereon; that
the waters in said pond are and always have been foul, and
emit foul odors and the deposit of said filth on plaintiff's said
property, etc." *Held,* that the word "permits" was not used
in the sense of passively suffered, but the petition should be
construed as charging defendant with affirmative action in per-
mitting waters other than surface water and slops and filth to
drain into the pond and overflow upon plaintiff's land.

4. **STATUTE OF LIMITATIONS: Continuing Nuisance: Rail-
roads: Embankments: Waters and Watercourses.** Although
a landowner's cause of action against a railroad company, for
water flowing on his land in its natural volume, by reason of
embankments, is barred by the Statute of Limitations, yet he

would have a cause of action for the pollution and artificial increase of the waters which overflowed and thereby damaged his land, by reason of the railroad company's actively permitting other waters, slops and filth to drain into the pond formed by its embankment, and which overflowed such land, since that is not a natural and necessary consequence of the original erection of the embankment and could not have been recovered for in a single suit in advance, and hence is not barred by reason of the fact that the action for damages resulting from the overflowing of the waters in their natural volume is barred.

5. ———: ———: Five-Year Statute: Waters and Watercourses. A cause of action for damage to land by actively permitting polluted water to overflow the same is barred by the five-year Statute of Limitations (Section 1889, Revised Statutes 1909).

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams*, Judge.

REVERSED AND REMANDED.

*Kinealy & Kinealy* for appellant.

(1) A landowner who gathers waters upon his land and then casts them upon the premises of another is liable in damages and can be enjoined. Paddock v. Somes, 102 Mo. 226; Grant v. Railroad, 149 Mo. App. 306; Lewis v. Springfield, 142 Mo. App. 84; Ready v. Railway, 98 Mo. App. 467. (2) Where the nuisance is an abatable one, successive actions for damages must be brought, and any damages suffered within the proper Statute of Limitations may be recovered. Pinney v. Berry, 61 Mo. 359; Schoen v. Kansas City, 65 Mo. App. 134; Bielman v. Railway, 50 Mo. App. 151; McGowan v. Railway, 23 Mo. App. 203. (3) The prayer of the petition is not part of the statement of the cause of action. McGrew v. Railway, 87 Mo. App. 250; Emmert v. Meyer, 65 Mo. App. 609; State ex rel. v. L. & L. Co., 161 Mo. 664.

*Robert & Robert* for respondent.

(1) When the fact appears upon the face of the petition that the action is barred by the Statute of Limitations, such can be taken advantage of by demurrer. State to use v. Bird, 22 Mo. 470; Boyce v. Christy, 47 Mo. 70; Coudrey v. Gilliam, 60 Mo. 98; Henoch v. Chaney, 61 Mo. 129; State ex rel. v. Spencer, 79 Mo. 314; Gas Co. v. City, 11 Mo. App. 55; Burrus v. Cook, 117 Mo. App. 384, 215 Mo. 496. (2) When injury inflicted is of a permanent character and goes to the entire value of the estate, but one recovery can be had and suit not brought until after the statute has run cannot be maintained. Bird v. Railroad, 30 Mo. App. 365; Bunten v. Railroad, 50 Mo. App. 414; Powers v. Railroad, 71 Mo. App. 540, 158 Mo. 104; James v. City, 83 Mo. 567; Howard Co. v. Railroad, 130 Mo. 652; R. S. 1899, secs. 4262, 4272, 4273 (now R. S. 1909, secs. 1879, 1888, 1889). (3) As the petition alleges that the St. Louis, Keokuk & Northwestern Ry. Co. erected the structure complained of, the defendants, being grantees, are not liable. Bunten v. Railroad, 50 Mo. App. 422; Wayland v. Railroad, 75 Mo. 548. (4) An owner of low land may prevent the flow of water upon his own land even though his obstruction turns it back upon the land of another. Thompson v. Railroad, 137 Mo. App. 62; McCormick v. Railroad, 57 Mo. 433; Hoester v. Hemsath, 16 Mo. App. 485; Abbott v. Railroad, 83 Mo. 282; Rychliki v. City, 98 Mo. 497; Gray v. Shreiber, 58 Mo. App. 173; Collier v. Railroad, 48 Mo. App. 398; Railroad v. Schneider, 30 Mo. App. 620; Schneider v. Railroad, 29 Mo. App. 68.

STATEMENT.—This suit was commenced in the circuit court of the city of St. Louis on December 24, 1909. The trial court sustained a demurrer to plaintiff's amended petition and the plaintiff declining to plead further judgment went in favor of defendant

upon both counts. Whereupon the plaintiff duly prosecuted her appeal to this court. The said amended petition, omitting caption, proceeded as follows:

"Plaintiff, by leave of court, files this, her amended petition, and states that the defendants are corporations and plaintiff is the widow of Francis Gorman, who died at the city of St. Louis on or about the 7th day of June, 1904, leaving a last will and testament whereby after bequeathing the sum of five dollars to each of his children he devised and bequeathed to plaintiff all other property, whether real, personal or mixed, which he owned at the time of his death; that at the time of his death the said Francis Gorman was, and for over twenty years immediately prior thereto had been, the owner of a parcel of ground lying, being and situate in the said city of St. Louis, and described as follows, to-wit: A tract of land situated in United States survey No. 926, having a front of 660 feet on the south line of Aurora avenue, and extending southwardly between parallel lines for a distance of 341 feet, eight inches and thence southwardly to the center line between Aurora and Humboldt avenue, on which center line it measures 620 feet, said tract being composed of lots 31 and 32 of that part of the subdivision entitled Garden Suburb by John How, which lies east of the Wabash Railroad, excepting therefrom the triangle off of the southeast corner conveyed to the St. Louis, Keokuk & Northwestern Railroad company; that the said will of said Francis Gorman was duly admitted to probate by the probate court of said city of St. Louis and his estate has been duly administered in said court and finally settled, and all the debts thereof and all the legacies provided for in said will have been duly paid, and plaintiff, ever since the death of said Francis Gorman, has been and still is the owner of said real estate and of the claim against defendants for all the damage done to said real estate as hereinafter set forth, and which

accrued to said Francis Gorman during his lifetime; that on or about the 1st day of February, 1892, the St. Louis, Keokuk & Northwestern Railroad Company became the owner of a tract of ground which bounded plaintiff's said ground on the east and also on the south; that the natural lay and conformation of all the ground in said vicinity is such that the drainage of the surface water is towards the south and east into Harlem creek and the Mississippi river; that on or about the 1st day of January, 1893, the said railroad company built a high railroad embankment on its property running in a general northeasterly and southwesterly direction, which passed within a few feet, to-wit, fifty feet, of the southeast corner of plaintiff's said tract of ground, and from said embankment at a point near the said southeastern corner of plaintiff's said property the said railroad company built another railroad embankment branching off from the first one mentioned and curving around towards the west and lying south of the south line of plaintiff's said property; that on or about the 1st day of September, 1897, the said railroad company for a nominal consideration conveyed so much of the said property owned by it adjoining plaintiff's property on the south as was not required for its railroad embankments to the defendant St. Louis and Kansas City Land Company, but said last named defendant held said ground for the use and benefit of said railroad company until the latter sold out to the defendant railroad company and since the said land company has held and now holds same for the use and benefit of the defendant Chicago, Burlington & Quincy Railroad Company and said last named defendant controls said St. Louis and Kansas City Land Company and controls the said land, and the use thereof; that on or about the 1st day of January, 1901, the said St. Louis, Keokuk & Northwestern Railroad Company sold, conveyed and delivered all its railroads and property of every kind to

defendant Chicago, Burlington and Quincy Railroad
Company and as part of the consideration therefor
the latter company assumed all debts, liabilities and
obligations of said St. Louis, Keokuk & Northwestern
Railroad Company; that the said railroad embank-
ments are solid embankments about fifteen feet high
without any openings, ditches, pipes or culverts that
would drain the water that came against the same;
that by reason of the want of such provisions for
drainage, water gathers and ever since said embank-
ments were built always has gathered against said em-
bankments and stood upon defendants' property and
formed a pond thereon into which defendants drain or
permit to drain or flow other waters, slops and filth
from a roundhouse, a boarding house and privies in
the vicinity; that said pond overflowed defendants'
said property and onto plaintiff's said property and
at times covers and stands upon the whole thereof,
carrying and depositing said filth thereon; that the
waters in said pond are and always have been foul and
emit foul odors and the deposit of said filth on plain-
tiff's said property and the said overflow thereof has
depreciated the value thereof $3700; that by reason of
the overflow of plaintiff's said property and its liabil-
ity to be so overflowed as aforesaid neither plaintiff
nor the said Francis Gorman was able to sell or lease
said property or to use same for any purpose or de-
rive any income therefrom since the date of the con-
struction of said embankments, whereby plaintiff has
been damaged $3700.

"Plaintiff therefore prays judgment against de-
fendants for the sum of $7400.

"For a second cause of action plaintiff makes
the facts set forth in the first paragraph of her pe-
tition a part of the statement of this cause of action
and further states that said embankments and said
pond constitute continuing nuisances which plaintiff is
entitled to have abated and as to which she has no ade-

quate remedy at law, and plaintiff therefore prays that defendants be required to abate said nuisances and that they be enjoined from maintaining said solid embankments without adequate provision for the drainage of water that may come against same, and from maintaining said pond or of draining any filth therein, and plaintiff prays the court to grant her sucn other and further relief as may be equitable and just.''

The demurrer which was sustained is as follows: ''Now come the defendants in the above entitled cause and demur to the petition of the plaintiff, and for grounds thereof say that the facts stated in said petition are not sufficient to constitute a cause of action. And for further grounds of demurrer, these defendants say that it appears upon the face of said petition that the embankments, the erection of which is complained of, were built in the year 1893, more than ten years prior to the filing of this suit, and that by reason thereof, under the statutes of the state of Missouri, sections 4262, 4272 and 4273, Revised Statutes 1899, the plaintiff should not be permitted to maintain this action.''

The only question here, is whether the trial court erred in sustaining said demurrer.

CAULFIELD, J. (after stating the facts).—As the plaintiff's counsel makes no claim that the petition states a cause of action under the statute (Sec. 3150, R. S. 1909), we will not so consider it, but will treat it, as they treat it, as an attempt to state a cause of action at common law. As to the Statute of Limitations, the rule, as we deduce it from the authorities, is, that where the nuisance is a permanent structure which causes damage and is bound to continue to do so as long as it remains the same, then the entire damage, present and prospective, accrues as soon as such actual damage begins and is discoverable, and is the

subject of a single action, which must be brought within
the period of limitation after such accrual. [Bird v. H.
& St. J. Ry. Co., 30 Mo. App. 365; Powers v. St. L. I. M.
& S. Ry. Co., 158 Mo. 87, 57 S. W. 1090; James v. City
of Kansas, 83 Mo. 567; Fowle v. New Haven & North-
ampton Co., 112 Mass. 334; Town of Troy v. Cheshire
R. R. Co., 3 Foster (N. H.) 83; Powers v. The City of
Council Bluffs, 45 Iowa, 652; Stodghill v. The C. B. &
Q. R. Co., 53 Iowa, 341.] Applying this rule to the
facts disclosed by the petition we are of the opinion
that the plaintiff's cause of action, if she or her
predecessor in title ever had any, for the mere stop-
page and overflow or backing up of surface water, is
barred by the Statute of Limitations. That partic-
ular form of damage was due solely to the erection and
maintenance of the embankments without openings,
etc. Whether the five or ten-year statute applies, we
need not determine, as the time which has elapsed is
greater than required by either. Such embankments
were so erected in 1893, more than sixteen years before
this suit was brought. They were railroad embank-
ments, "solid embankments about fifteen feet high,"
which are "about as permanent as anything that hu-
man hands can make." [Stodghill v. The C. B. & Q. R.
R. Co., supra.] The natural lay and conformation of
all the ground in the vicinity was such that the drainage
of the surface water was towards the place where the
embankments were erected, so that necessarily and
immediately they caused such water to back up and
overflow the plaintiff's land. From the facts and
circumstances stated in the petition it must have been
apparent that it would continue to have that effect as
long as the embankments remained the same. Plain-
tiff makes this certain by alleging "that *by reason of
the overflow of plaintiff's said property and its liabil-
ity to be so overflowed* as aforesaid neither plaintiff
nor the said Francis Gorman was able to sell or lease
said property or to use same for any purpose or de-

rive any income therefrom *since the date of the con-struction of said embankments.*"

With this view of the case it is unnecessary for us to decide whether plaintiff or her predecessor in title ever had any cause of action on account of the turning back upon the plaintiff's land of mere surface water; or whether either of the defendants could be held liable for injury due to an erection made by their predecessor in title, and not by them; or whether the defendant St. Louis and Kansas City Land Company is liable for injuries due solely to an erection not on its land nor under its control.

But we find on perusing the petition the plaintiff does not confine her complaint to injuries due solely to the erection and maintenance of said embankments or to the turning back and overflowing her land with mere surface water. She goes farther, and charges that the waters gathered by the embankment "stood upon defendants' property and formed a pond thereon *into which defendants' drain or permit to drain or flow other waters, slops and filth from a roundhouse, a boarding house and privies in the vicinity;* that said pond overflowed defendants' said property and onto plaintiff's said property and at times covers and stands upon the whole thereof, *carrying and depositing said filth thereon;* that the waters in said pond *are and always have been foul and emit foul odors and the deposit of said filth on plaintiff's said property* and the said overflow thereof has depreciated the value thereof $3700." What would be the effect if it appeared that this filth came down upon the defendants' land over plaintiff's land, or came upon defendants' land without its active permission we need not determine. The petition states no such case. As we interpret this language the word "permit" is not used in the sense of "passively suffered" but it charges the defendants with affirmative action in permitting other waters, slops and filth to drain into the pond and over-

flow it upon the plaintiff's land, etc. And it charges that both of the defendants are guilty in this respect.

We have no doubt that so considered the petition states a cause of action, and is good against a demurrer, though much of its contents might have been stricken out on motion. While because of the Statute of Limitations already discussed, if for no other reason, the plaintiff cannot now complain that the embankments cause her land to be overflowed by water in its natural volume and state, it is quite clear to us that to the extent plaintiff has been damaged through the pollution and artificial increase ·of the waters which overflowed her lands, she has a right to recover against the defendants, they having caused or affirmatively permitted such pollution and artificial increase. [Gould on Waters (3 Ed.), sec. 278; Gawtry v. Leland, 31 N. J. Eq. 385; Lockett v. Fort Worth, etc. Ry. Co., 78 Texas, 211, 14 S. W. 564.] This was not the kind of damage which was a natural and necessary consequence of the original erection of the embankments and it could not have been recovered for in a single suit in advance, as could that which we have held is barred. Of course she cannot now recover for any damage, however caused, which has not accrued within five years before this suit was commenced, (Sec. 1889, R. S. 1909). The judgment is reversed and the cause remanded. *Reynolds, P. J.,* and *Nortoni, J.,* concur.